**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| FRIENDSHIP VILLAGE OF | § | Case No.: 17-12470 |
| MILL CREEK, NFP, d/b/a | § | |
| GREENFIELDS OF GENEVA, | § | |
| | § | |
| FEIN: 20-3300991, | § | |
| | § | |
| Debtor. | § | Hon. LaShonda A. Hunt |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO
USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION;
(III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**

This Interim Order (this "Interim Order") is entered upon the Debtor's Motion for
Interim and Final Orders Authorizing the Use Cash Collateral and Providing Adequate
Protection to the Bond Trustee (the "Motion"), and upon terms agreed to by and between
Friendship Village of Mill Creek, NFP, d/b/a GreenFields of Geneva (the "Debtor") and UMB
Bank, N.A., in its capacity as successor Bond Trustee under the Bond Indenture and as
successor Master Trustee under the Master Trust Indenture (together, the "Bond Trustee").
Capitalized terms used in this Interim Order but not specifically defined have the meanings set
forth in the Motion.

In connection with the Bankruptcy Case (as defined below) and the Motion, subject to
Section 24 below, the Debtor and the Bond Trustee have stipulated and agree as follows:

**The Debtor's Bankruptcy Case; Procedural Background; Jurisdiction; Notice**

A.     On April 17, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for
relief (the "Bankruptcy Case") with this Court (the "Court") under Chapter 11 of Title 11 of
the United States Code (the "Bankruptcy Code").

B.     Prior to the commencement of the Bankruptcy Case, the Debtor, with the consent of the Bond Trustee, commenced a marketing and sale process that is expected to culminate, as a result of actions taken by the Debtor and orders entered by the Court in this Bankruptcy Case, either in (i) a sale of substantially all of the Debtor's assets in accordance with Section 363 of the Bankruptcy Code or; (ii) a plan of reorganization (a "Plan of Reorganization") in the event the party proposing the highest and best offer as part of the Court-approved solicitation process chooses such option (collectively, the "Solicitation Process").

C.     The Debtor is the owner and operator of a continuing care retirement community known as GreenFields of Geneva, consisting of (i) 147 independent living units, (ii) 51 assisted living units, (iii) 26 memory support assisted living units, (iv) 43 nursing beds, and (v) related common areas and parking (the "Campus").

## The Secured Bond Obligations

D.     The Debtor is obligated to the Bond Trustee for the benefit of the beneficial holders of the Bonds (as defined below) authorized and issued by the Illinois Finance Authority (the "Authority") for the benefit of the Debtor.

E.     The Authority issued its (i) $89,100,000 Revenue Bonds, Series 2010A (GreenFields of Geneva Project) (the "Series A Bonds"), (ii) $5,000,000 Revenue Bonds, Series 2010B (GreenFields of Geneva Project) (Accelerated Redemption Reset Option Securities (ARROS$^{SM}$)) (the "Series B Bonds"), (iii) $3,575,000 Revenue Bonds, Series 2010C-1 (GreenFields of Geneva Project) (Tax-Exempt Mandatory Paydown Securities (TEMPS-75$^{SM}$)) (the "Series C-1 Bonds"), (iv) $8,325,000 Revenue Bonds, Series 2010C-2 (GreenFields of Geneva Project) (Tax-Exempt Mandatory Paydown Securities (TEMPS-65$^{SM}$)) (the "Series C-2 Bonds"), and (v) $11,600,000 Revenue Bonds, Series 2010C-3

(GreenFields of Geneva Project) (Tax-Exempt Mandatory Paydown Securities (TEMPS-50$^{SM}$)) (the "Series C-3 Bonds"; and together with the Series A Bonds, the Series B Bonds, the Series C-1 Bonds, and the Series C-2 Bonds, the "Bonds").

F.      Proceeds from the sale of the Bonds were loaned to the Debtor pursuant to the Loan Agreement, dated as of August 1, 2010 (the "Loan Agreement"), between the Authority and the Debtor, and were used by the Debtor primarily to: (i) pay or reimburse the Debtor, or refinance outstanding indebtedness, the proceeds of which were used for the payment of all or a portion of the costs of acquiring, constructing, renovating, remodeling and equipping certain health facilities owned by the Debtor, and all necessary and attendant facilities, equipment, site work, zoning, entitlements and utilities related thereto, including, but not limited to, the acquisition, construction and equipping of the Campus; (ii) provide working capital; (iii) fund debt service reserve funds; (iv) pay a portion of the interest on the Bonds; and (v) pay certain expenses incurred in connection with the issuance of the Bonds and the costs of refunding or paying existing indebtedness. The rights of the Authority under the Loan Agreement were assigned to the Bond Trustee under the terms of the Bond Trust Indenture dated as of August 1, 2010 (the "Bond Indenture") between the Authority and the Bond Trustee.

G.      The Bond Indenture established various funds to be held by the Bond Trustee, including a "Debt Service Reserve Fund" and an "Operating Reserve Fund" (the Debt Service Reserve Fund, the Operating Reserve Fund and such other funds held by the Bond Trustee pursuant to the Bond Indenture or the Master Trust Indenture are referred to collectively as the "Bond Trustee Funds"). As of the Petition Date, the aggregate balance of the Bond Trustee Funds was approximately $2,845,304.07. The Debtor acknowledges and the Court finds that the Bond Trustee Funds are held in trust for the benefit of the holders of the Bonds (the

3

"Bondholders") and that the Bond Trustee is entitled to use the Bond Trustee Funds in accordance with the terms of the Bond Documents (as defined below). Notwithstanding this acknowledgement, the Debtor further consents to a lift of the stay imposed under section 362 of the Bankruptcy Code so as to permit the Bond Trustee to exercise all of its rights in and with respect to the Bond Trustee Funds, pursuant to the Bond Documents (as defined below) and the Bankruptcy Code.

H.      As of the Petition Date, the amounts due and owing by the Debtor with respect to the Bonds are as follows (collectively, the "Bond Claim"):

(i)      Unpaid principal on the Bonds in the amount of $97,675,000;

(ii)     Accrued but unpaid interest on the Bonds in the amount of $2,597,341.10 as of April 14, 2017; and

(iii)    unliquidated, accrued and unpaid fees and expenses of the Bond Trustee and its professionals incurred through the Petition Date. Such amounts, when liquidated, shall be added to the aggregate amount of the Bond Claim.

### Security for the Bond Obligations

I.      The Debtor has granted the Bond Trustee (i) a first priority security interest in Gross Revenues defined in and pursuant to a Master Trust Indenture, dated as of August 1, 2010 (the "Master Trust Indenture"), among the Debtor and the Bond Trustee (as the Master Trustee thereunder), and (ii) a first priority mortgage and other liens on certain real and personal property owned by the Debtor (subject only to the statutory lien of Illinois governmental units on the Campus to secure the payment of general taxes (the "Kane County Tax Lien") to the extent provided under Illinois law) pursuant to a Mortgage and Security Agreement, dated as of August 1, 2010, by and between the Debtor and the Bond Trustee (the "Mortgage" and together with the Bond Indenture, the Master Trust Indenture, the Loan Agreement and any other document or agreement delivered as security for, or in respect to, the

Bonds are collectively referred to herein as the "Bond Documents"). Pursuant to these grants, the Bond Trustee holds valid and perfected first priority liens and security interests in substantially all of the Debtor's real and personal property (excepts as expressly noted herein) as security for its obligations associated with the Bonds including, but not limited to, Gross Revenues (as defined in the Bond Documents) generated by the Debtor or otherwise by the Campus (the "Revenues" and together with the other collateral described in the Bond Documents, the "Prepetition Bond Collateral").

J.    The Debtor owns two vans and a pickup truck which the Debtor uses at the Campus on a daily basis (collectively, the "Vehicles"). The Vehicles are unencumbered by any lien or security interest, including the Liens.

### Use of Cash Collateral and Need for Adequate Protection

K.    The Debtor has requested the use of Cash Collateral (as defined below) in connection with the Bankruptcy Case to preserve the value of its business. Pursuant to the Bankruptcy Code, the Debtor is required, upon the Bond Trustee's request, to provide adequate protection to the Bond Trustee in respect of the Debtor's use of Cash Collateral. The Bond Trustee has informed the Debtor and this Court that the Bond Trustee does not consent to the use of Cash Collateral except upon the terms and conditions of this Interim Order.

L.    Without the use of Cash Collateral of at least $396,560.00 on an interim basis through the date of the final hearing on the Motion (on or about May 5, 2017), the Debtor would suffer immediate and irreparable harm pending a final hearing on the Motion and would likely be required to cease operations immediately. At a minimum, the Debtor's inability to use Cash Collateral would disrupt the Debtor's operations as a going concern, would severely hamper the Debtor's efforts to market the Campus as part of the Solicitation Process, would

eliminate or significantly decrease the possibility of confirmation of a Plan of Reorganization if necessary (which would have the effect of eliminating certain bidders), and would otherwise not be in the best interests of the Debtor, its estate, or creditors, including the Bondholders and residents of the Campus. In lieu of giving the Bond Trustee relief from stay or attempting to obtain this Court's approval for use of Cash Collateral on a non-consensual basis, the Debtor wishes to provide adequate protection of the liens and security interests of the Bond Trustee in Cash Collateral and other Prepetition Bond Collateral on the terms set forth in this Interim Order, including the Adequate Protection Payments (as defined below) reflecting the agreement of the Debtor and the Bond Trustee.

M.    The Debtor agrees that it shall not take any action to assert any of the following: (i) that the Bond Claim is not a valid, binding, and allowed claim against the Debtor's estate; (ii) that the Bond Claim is not secured by valid, enforceable, duly perfected first priority liens on and security interests in the Prepetition Bond Collateral pursuant to the Bond Documents, or (iii) that either the Bond Claim or the liens or security interests securing the Bond Claim, are subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

N.    The Debtor agrees that the Bond Trustee shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person," "managing agent," or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtor, notwithstanding the actions contemplated by this Interim Order, the Bond Trustee's consent to

this Interim Order or the Bond Trustee's extension of financial accommodations of any type, kind, or nature under this Interim Order.

O.   Good cause has been shown for the entry of this Interim Order.

**NOW, THEREFORE, THE COURT HEREBY CONCLUDES AND ORDERS AS FOLLOWS:**

1.   <u>Jurisdiction</u>. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. The Debtor has operated its business and managed its property as Debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. No request has been made for the appointment of a trustee or examiner in this Bankruptcy Case and no committee of unsecured creditors has been appointed in this Bankruptcy Case under section 1102 of the Bankruptcy Code as of the date hereof.

2.   <u>Notice</u>. The Debtor has properly served notice of the Motion and the interim hearing thereon pursuant to Sections 102, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and the Local Bankruptcy Rules of this Court (the "<u>Local Rules</u>"), which notice was sent to, among others: (i) the United States Trustee for the Northern District of Illinois; (ii) the United States Attorney for the Northern District of Illinois; (iii) counsel for the Bond Trustee; (iv) the Debtor's other secured creditors; (v) the Internal Revenue Service; (vi) the Illinois Department of Revenue; (vii) the United States Department of Health and Human Services; (viii) the Illinois Department of Human Services; (ix) the Authority; (x) the Centers for Medicare and Medicaid Services; (xi) the Illinois Department of Financial and Professional Regulation; (xii) the Illinois Department of Public Health; (xiii) the holders of the twenty largest unsecured claims against the Debtor; and (xiv) those who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule

7

2002. This notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules in respect to the relief requested.

3.      <u>Good Cause</u>. Good cause has been shown for entry of this Order.

4.      <u>Disposition</u>. The Motion is GRANTED on an interim basis on the terms set forth in this Interim Order. The requirements of Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2 are satisfied with respect to the use of Cash Collateral on an interim and preliminary basis pending a final hearing on the Motion. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn, and all reservations of rights contained therein, are overruled on the merits, without prejudice, however, to any such objection or reservation of rights being reasserted in connection with the hearing on entry of the Final Order.

5.      <u>Authorization to Use Cash Collateral</u>. The Debtor is authorized to use, as cash collateral (as defined in Section 363 of the Bankruptcy Code), any Revenues derived by the Debtor in the ordinary course of its business, all accounts receivable held by the Debtor, and all amounts currently held in the Debtor's operating accounts (collectively, the "<u>Cash Collateral</u>"), until the earlier of (i) the Debtor's ability to use Cash Collateral terminates as the result of the occurrence of a Termination Event (as set forth below) or (ii) the last day included in the Cash Collateral Budget (as defined below), but only on the terms of this Interim Order. Subject to the preceding sentence, such use of Cash Collateral shall be limited solely to the categories of expenses listed in the budget attached hereto as **<u>Schedule A</u>** (the "<u>Cash Collateral Budget</u>"). Further, such use of Cash Collateral shall be limited solely to pay expenses in the amounts and at the times listed in the Cash Collateral Budget, including the Adequate

8

Protection Payments (as defined below); provided, however, that the Debtor shall have

authority to use Cash Collateral in excess of, and at times different from, the amounts set forth

in the Cash Collateral Budget to the extent such a variance does not constitute a Termination

Event described in paragraph 16(i) of this Interim Order.

6.    Exclusion from Cash Collateral. The Debtor is not authorized to use and shall

not use any Revenues not derived in the ordinary course of the Debtor's operations. Nothing in

this Interim Order, or in any subsequent order concerning the extension of the use of Cash

Collateral, or other order of this Court shall entitle the Debtor to use any Bond Trustee Funds,

and no lien or other interest may be granted in the Bond Trustee Funds to any third party.

7.    Prohibited Use of Cash Collateral. Except as expressly provided in this Order,

no Cash Collateral or proceeds thereof shall be used for the purpose of: (i) objecting to, or

contesting in any manner, or raising any defense to, the validity, amount, extent, perfection,

priority, or enforceability of the Bonds, the Prepetition Bond Collateral, the Bond Claim, or

any liens or security interests with respect thereto, or any other rights or interests of the Bond

Trustee therein or in the Bond Trustee Funds; (ii) asserting any claims or defenses or causes of

action arising out of, based upon, or related to, in whole or in part, the Bonds or the Bond

Documents, against the Bond Trustee, the Bondholders in their capacity as such, or their

respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or

advisors including, without limitation, any actions under Chapter 5 of the Bankruptcy Code,

including with respect to payments made pursuant to the Bond Documents; (iii) paying any

material amounts on account of claims arising before the Petition Date, except to the extent

provided for in the Cash Collateral Budget and approved by the Court; (iv) seeking to modify

any of the rights granted to the Bond Trustee hereunder, (v) seeking to bifurcate any claims of

the Bond Trustee, or (vi) pursing confirmation of a plan of reorganization (other than a plan of reorganization pursuing the terms set forth in the term sheet, as referenced in the motion to approve bidding procedures and approval of a sale; provided, however, the Bond Trustee reserves all rights to object to same).

8.      <u>Amendment or Extension of Use of Cash Collateral</u>. The Debtor may, at any time, propose to the Bond Trustee in writing (including by email) an amended Cash Collateral Budget, either for the period covered by the Cash Collateral Budget or for any period thereafter, and the Bond Trustee may approve or not approve any such amendment in its sole and absolute discretion. Upon the written consent of the Bond Trustee, the amended Cash Collateral Budget shall become the Cash Collateral Budget for purposes of this Interim Order, upon entry of an order by the Court. At such time as the amended Cash Collateral Budget becomes the Cash Collateral Budget, the Debtor shall file a copy thereof with this Court and shall provide a copy thereof to any party in interest upon request to the Debtor's counsel

9.      <u>Adequate Protection Payments</u>. In consideration of the Debtor's use of Cash Collateral and the diminution in its Prepetition Bond Collateral on and after the Petition Date, on or before the fifteenth (15th) day of each month, the Debtor shall make an adequate protection payment in the amount of $50,000 (each, an "<u>Adequate Protection Payment</u>") to the Bond Trustee. Any and all payments or proceeds remitted to the Bond Trustee pursuant to the provisions of this Interim Order or otherwise shall be received by the Bond Trustee, free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on sections 506(c) and/or 552(b) of the Bankruptcy Code, whether directly or indirectly, all of which are hereby waived by the Debtor. In the event that it is determined by final order of the Court that the Bond Trustee is not entitled

10

under Bankruptcy Code section 506(b) to any payments or proceeds remitted to the Bond

Trustee on account of postpetition interest, fees and expenses relating to the Bond Claim, then

any such payments or proceeds remitted to the Bond Trustee shall reduce the Bond Claim held

by the Bond Trustee.

10.    Replacement Lien. As further adequate protection for any diminution in the

value of Cash Collateral and other Prepetition Bond Collateral resulting from the Debtor's use

thereof after the Petition Date ("Diminution"), and solely to the extent of any Diminution, the

Bond Trustee shall have a valid, perfected, and enforceable replacement lien and security

interest (the "Replacement Lien") in (i) all assets of the Debtor existing on or after the Petition

Date of the same type as the Prepetition Bond Collateral, together with the proceeds, rents,

products, and profits thereof, whether acquired or arising before or after the Petition Date, to

the same extent, validity, perfection, enforceability, and priority of the liens and security

interests of the Bond Trustee as of the Petition Date (the "Postpetition Bond Collateral"); and

(ii) all other assets of the Debtor of any kind or nature whatsoever within the meaning of

Section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition,

together with all proceeds, rents, products, and profits thereof (the "Supplemental Collateral"

provided, however, for the purposes of this Interim Order, Supplemental Collateral shall be

exclusive of causes of action under Chapter 5 of the Bankruptcy Code and proceeds thereof)

and, collectively with the Postpetition Bond Collateral, the "Collateral"). The Replacement

Lien shall be subject and subordinate to the Carve Out (as defined below) and any valid and

perfected liens existing on the Petition Date that are senior to Liens of the Bond Trustee against

the Bond Collateral ("Prior Liens"). Notwithstanding any other provision of this Interim Order,

no Diminution shall occur or be deemed to occur as a result of a use of Cash Collateral which

pays or satisfies any lien on the Collateral which is senior to Liens of the Bond Trustee against the Bond Collateral, including without limitation, to the extent applicable, the Kane County Tax Lien.

11.    <u>No Further Action Required</u>. The approval of this Interim Order by the Court shall be sufficient and conclusive evidence of the validity, extent, enforceability, and perfection of the Replacement Lien granted to the Bond Trustee, whether or not the Bond Trustee elects to file or record financing statements or any other documents that may otherwise be required under federal or state law in any jurisdiction, or to take such other steps as may otherwise be required to obtain, evidence, or perfect such liens under applicable law; <u>provided, however,</u> that upon the request of the Bond Trustee, the Debtor shall execute such other documents as may be reasonably requested to evidence and perfect such liens; that the Bond Trustee may, in its sole discretion, but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property; that the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon the Bond Trustee's reasonable request; and that such filing or recording shall be accepted and shall constitute further evidence of perfection of the Bond Trustee's liens and security interests. No obligation, payment, transfer, or grant of security under this Interim Order shall be stayed (other than by court order in an appeal from this Interim Order), restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any otherwise applicable state law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

12.    <u>Superpriority Claim</u>. As additional adequate protection for any Diminution, the Bond Trustee shall have a superpriority administrative expense claim pursuant to Section

507(b) of the Bankruptcy Code with recourse to and payable from any and all assets of the

Debtor's estate, including but not limited to rights of the Debtor, choses in action, or claims of

any kind whatsoever, choate or inchoate, present or residual that for any reason cannot be made

the subject of the Replacement Lien (the "Secured Party Superpriority Claim"). The Secured

Party Superpriority Claim shall be subject only to Prior Liens and the Carve Out (as defined

below) and shall have priority, pursuant to Section 507(b) of the Bankruptcy Code, over any

and all administrative expenses, diminution claims, and all other claims against the Debtor, now

existing or hereafter arising, of any kind whatsoever, including, without limitation, all other

administrative expenses of the kind specified in Section 503(b) of the Bankruptcy Code, and

over any and all administrative expenses or other claims arising under Sections 105, 326,

328, 330, 331, 503(b), 506(c) (following entry of the Final Order), 507(a), 507(b), 546, 726,

1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the

Debtor, any successor trustee, or any creditor in this Bankruptcy Case, whether or not such

expenses or claims may become secured by a judgment lien or other non-consensual lien,

levy, or attachment. For the avoidance of doubt, the Bond Trustee shall not seek to disgorge

any payments that are made to third-parties (including professionals) that are in accordance

with the terms of the Budget (or otherwise consented to by the Bond Trustee) for the purpose

of satisfying the Secured Party Superpriority Claim.

      13.   Allowance of Claim. Except as set forth in paragraph 24 below, the entry of this

Interim Order by the Court shall be a conclusive and binding determination on all parties (x) as

to the amount of the Bond Claim, and (y) as to the scope, extent, perfection, validity, and

enforceability, in all respects, of the Bond Trustee's security interests and liens in the

Prepetition Bond Collateral, including, without limitation, the Cash Collateral.

13

14.    <u>Financial Information</u>. As additional adequate protection of the Bond Trustee's security interests in the Cash Collateral, the Debtor shall allow the Bond Trustee and its professionals and designees reasonable access, during normal business hours and on not less than 24 hours' notice, to the premises of the Debtor in order to conduct appraisals, analyses, and/or audits of the Prepetition Bond Collateral and the Collateral, and shall otherwise reasonably cooperate in providing any other financial information reasonably requested by the Bond Trustee for this purpose. From and after the entry of this Interim Order, the Debtor shall provide to the Bond Trustee once each week (commencing with the second week after the Petition Date), a weekly report certified by the Debtor's chief financial officer and in the same form as the Cash Collateral Budget indicating all receipts received and disbursements made by the Debtor in the week ending the prior Friday compared to the Cash Collateral Budget and detailing any variances of more than 10% and at least $10,000 from the expenditures and receipts in the Cash Collateral Budget. The Debtor and their professionals shall be available once each week (subject to reasonable scheduling conflicts) for a telephonic conference call with the Bond Trustee to discuss the status of the Solicitation Process, the results of operations, and other matters pertaining to the Campus and the Bankruptcy Case. The Bond Trustee, the Bondholder and their respective professionals shall have access to the investment banker retained by the Debtor, independent from the Debtor and its representatives. The Debtor shall provide to the Bond Trustee such other reports and information as the Bond Trustee may reasonably request from time to time.

15.    <u>Compliance With Bond Documents</u>. As further adequate protection against Diminution, the Debtor shall comply with those terms and provisions of the Bond Documents set forth on **<u>Schedule B</u>** attached hereto and incorporated herein. The requirements of this

14

Interim Order shall be in addition to, and not in substitution for, the terms and provisions of the Bond Documents set forth on **Schedule B**; provided, however, that in the event of any inconsistency between the Bond Documents and this Interim Order, the terms of this Interim Order shall control.

16.    <u>Termination of Use of Cash Collateral With Notice</u>. A Termination Event shall be deemed to have occurred seven (7) business days after written notice sent by the Bond Trustee to the Debtor, their counsel, and the United States Trustee of the occurrence of any of the following (a "<u>Termination Event</u>"):

(i)    the payment of any expenses that would cause: (x) aggregate expenditures under the Cash Collateral Budget to exceed one hundred five percent (105%) of the total budgeted expenses for that same Measuring Period (as defined below), or (y) expenditures under a single line item of the Cash Collateral Budget to exceed one hundred ten percent (110%) of the amount budgeted for that same line item for that same Measuring Period, <u>provided</u> <u>however</u>, professional fees shall not be subject to any such variance. This variance shall be measured, on a rolling four week period (the "<u>Measuring Period</u>"); <u>provided</u>, <u>however</u>, that for purposes of calculating such variances, (i) the first Measuring Period shall be the one week after the Petition Date and the first week of the Cash Collateral Budget, (ii) the second Measuring Period shall be the two weeks after the Petition Date and the first two weeks of the Cash Collateral Budget, (iii) the third Measuring Period shall be the three weeks after the Petition Date and the first three weeks of the Cash Collateral Budget, and (iv) the fourth Measuring Period shall be the first four weeks after the Petition Date and the first four weeks of the Cash Collateral Budget. Any budgeted expenditures not paid in a particular budget period (including without limitation budgeted expenditures for professional fees) may be paid during a subsequent period and, for the purpose of calculating rolling four week variances set forth above, the Cash Collateral Budget will be revised to move such expenditures to the later period, it being understood that such later period can be outside the four-week period;

(ii)    the failure of the Debtor to pay, within ten (10) days of the applicable due date, all undisputed administrative expenses in full in accordance with their terms as provided for in the Cash Collateral Budget except for any expenses under sections 503(b)(9) or 546(c) of the Bankruptcy Code;

(iii)   the Debtor fails to timely make any of the Adequate Protection Payments;

(iv)   the failure of the Debtor to timely pay all fees due under 28 U.S.C. § 1930; and

(v)    the failure of the Debtor to comply with, keep, observe, or perform any of its agreements or undertakings under this Interim Order.

Unless the Debtor has cured the Termination Event(s) specified in the Bond Trustee's notice prior to the expiration of the seven (7) business day period (the "Default Notice Period") described in this paragraph 16 or obtained an order of this Court, on notice to and with the opportunity to be heard by the Bond Trustee, that no such Termination Event has occurred, the Debtor's authority to use Cash Collateral hereunder shall terminate immediately at the expiration of the Default Notice Period. During the Default Notice Period, the Debtor may request (and the Bond Trustee agrees not to oppose) an emergency hearing before the Court, with proper notice to the Bond Trustee, to contest the alleged occurrence or continuation of a Termination Event. The Bond Trustee shall have the power to waive any Termination Event set forth in this paragraph 16 in its sole discretion without further order of the Court.

17.    <u>Termination of Use of Cash Collateral Without Prior Notice</u>. The Debtor's authority to use Cash Collateral hereunder shall terminate without any further action by this Court, and a Termination Event shall occur without prior notice, upon the occurrence of any of the following (also a "<u>Termination Event</u>"):

(i)    the Bankruptcy Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

(ii)   the earlier of (y) the date of the entry of an order of this Court appointing a Chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in Sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code) for the Debtor; or (z) the date the Debtor files a motion, application, or other pleading consenting to or acquiescing in any such appointment;

16

(iii)   the Debtor fails to obtain an order approving bidding procedures relating to the Solicitation Process in form and substance acceptable to the Bond Trustee on or before May 11, 2017 (the "<u>Approved Bidding Procedures</u>") which date shall be subject to extension by the Bond Trustee without further order of the Court;

(iv)   the Debtor fails to conduct an auction in connection with the Approved Bidding Procedures the "<u>Approved Bidding Procedures</u> on or before July 26, 2017 which date shall be subject to extension by the Bond Trustee without further order of the Court;

(v)    an order is entered in the Bankruptcy Case over the objection of the Bond Trustee approving financing pursuant to Section 364 of the Bankruptcy Code that would grant an additional security interest or a lien on any Collateral or granting a superpriority administrative claim that is equal or superior to the superpriority administrative claim granted to the Bond Trustee under this Interim Order;

(vi)   the Debtor files a plan of reorganization or disclosure statement that is not consented to by the Bond Trustee (other than a plan of reorganization (or a disclosure statement describing a plan of reorganization) that pursues the terms set forth in the term sheet, as referenced in the motion to approve bidding procedures and approval of a sale; provided, however, the Bond Trustee reserves all rights to object to same).

(vii)  an adversary proceeding or contested matter is commenced or joined by the Debtor challenging the amount, validity, enforceability, priority, or extent of the Bond Trustee's liens, security interests, or claims;

(viii) the Court fails to enter a Final Order allowing the Motion, on terms acceptable to the Bond Trustee, on or before May 19, 2017.

Upon the occurrence of a Termination Event described in this paragraph 17, the Debtor's authority to use Cash Collateral hereunder shall immediately and automatically terminate. The Bond Trustee shall have the power to waive any Termination Event set forth in this paragraph 17 in its sole discretion without further order of the Court.

18.    <u>Claims and Causes of Action</u>. Subject to paragraph 24 of this Interim Order, the Debtor hereby waives, releases, and discharges the Bond Trustee, all Bondholders in their capacity as such, and their respective affiliates, agents, attorneys, professionals, officers,

directors, and employees (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon, or related to, in whole or in part, the Bonds and the Bond Documents; any aspect of the prepetition relationship between the Bond Trustee and/or the Bondholders, and the Debtor; and any other acts or omissions by the Bond Trustee and/or the Bondholders in connection with either the Bond Documents or the Bond Trustee's and/or Bondholders' prepetition relationship with the Debtor. Further, subject to paragraph 24 of this Interim Order, the Debtor waives any and all rights to object to or contest the amount of the Bond Claim or the Bond Trustee's security interest in the Prepetition Bond Collateral and agrees not to challenge that all such claims and security interests have been duly perfected and are in all respects valid and enforceable first priority security interests and liens.

19.     Failure of Adequate Protection. Nothing herein shall constitute a waiver, release or modification of the rights of the Bond Trustee to assert a claim under Sections 364(c) and 507(b) of the Bankruptcy Code.

20.     Deemed Request for Stay Relief. This Interim Order shall be deemed to constitute a request as of the Petition Date by the Bond Trustee for relief from the automatic stay with respect to the Prepetition Bond Collateral for purposes of any request for adequate protection granted hereunder.

21.     No Charge on Collateral; Carve Out. In partial consideration of the Debtor's acknowledgement of the debt due and owing and the waiver of any claims under Section 506(c) and Section 552(b) of the Bankruptcy Code (upon entry of the Final Order), the Bond Trustee consents to certain expenses and professional fees incurred during the pendency of this Bankruptcy Case that shall be superior in all instances to the liens and claims of the Bond Trustee and all other parties (the "Carve Out"). For purposes hereof, the "Carve Out" means

18

(a) the fees and expenses of professionals retained by the Debtor and any Committee in an aggregate amount not to exceed the sum of: (i) the dollar amount of such fees and expenses to the extent (A) incurred or accrued prior to a Termination Event and remaining unpaid, (B) provided for under the Cash Collateral Budget, (C) previously or subsequently allowed by Court order, and (D) for which no retainer is available to pay such fees and expenses; plus (b) the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of this Court. Nothing herein shall constitute a waiver of any right of the Bond Trustee to object to fees and expenses of any professionals or to challenge any assertion that any amount of the fees and expenses remain unpaid. The entry of a Final Order shall be a conclusive and binding determination on all parties that, except for the Carve Out, no costs or expenses of administration shall be imposed against the Bond Trustee or the Prepetition Bond Collateral or the Collateral under Section 105 of the Bankruptcy Code or, subject to entry of the Final Order, Section 506(c) or Section 552(b) of the Bankruptcy Code, or otherwise.

22.    <u>Modification of Stay</u>. The automatic stay imposed by Section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the Bond Trustee to: (i) receive payments to be made by the Debtor to the Bond Trustee for and on behalf of the Bondholders, including but not limited to the Adequate Protection Payments, (ii) apply, allocate, or make payments from any of the funds or accounts maintained by the Bond Trustee (including, without limitation, the Bond Trustee Funds) in accordance with the terms of the Bond Documents, and (iii) take any action authorized by this Interim Order.

23.    <u>Preservation of Rights</u>. If any or all of the provisions of this Interim Order are, at any time, modified, vacated or stayed, such stay, modification, or vacation shall not affect

the validity, extent, priority, and enforceability of any lien, priority, or other benefit conferred under this Interim Order prior to such stay, modification, or vacation.

24.    <u>Binding Effect</u>. This Interim Order shall be binding on all creditors and parties in interest in this Bankruptcy Case, including, but not limited to, the Debtor and any successors thereto, any Chapter 11 or Chapter 7 trustee that is appointed or elected in these cases; <u>provided</u>, <u>however,</u> that this Interim Order is without prejudice to the rights of any party in interest (other than the Debtor) to challenge or commence an action relating to the validity, amount, perfection, priority, extent, or enforceability of the Bond Claim or the prepetition security interests of the Bond Trustee or otherwise asserting any claims or causes of action against the Bond Trustee or the Bondholders (any and all claims and causes of action against the Bond Trustee or the Bondholders is hereby defined as a "<u>Challenge</u>"), so long as any Challenge is made on or before the date that is the earlier of (i) 75 days from the entry of the Final Order or (ii) 60 days from the day a committee of unsecured creditors has been appointed (the "<u>Challenge Period</u>"), after which Challenge Period all Challenges shall be deemed finally and conclusively barred; <u>provided</u> <u>further</u> that if one or more Challenges are timely made under this paragraph 24 and properly filed, then except for such Challenges timely made, all potential Challenges are hereby deemed forever waived and relinquished.

25.    <u>No Competing Liens</u>. Except as set forth herein, the Debtor shall not grant liens on, or security interests in, the Prepetition Bond Collateral or the Collateral to any other party, pursuant to Section 364 of the Bankruptcy Code or otherwise, without the consent of the Bond Trustee.

26.    <u>Reservation of Rights</u>. Except as provided in this Interim Order, neither the Debtor nor the Bond Trustee waives any of its rights under the Bankruptcy Code, any

applicable law, or the Bond Documents, including, without limitation, the right of the Debtor

or the Bond Trustee at any time to seek any relief (or to oppose any such relief) under the

Bankruptcy Code, or the right of the Debtor or the Bond Trustee to exercise any of its rights

and remedies under the Bankruptcy Code at any time.

27.     Further Relief. Nothing herein shall (i) preclude the Bond Trustee from seeking

any other relief that it may deem appropriate, including relief from the automatic stay; or

(ii) prevent the Bond Trustee from asserting at some later time that its liens and security

interests in the Prepetition Bond Collateral are not being adequately protected.

28.     No Third Party Beneficiaries. Except as expressly provided herein, no rights are

created hereunder for the benefit of any third party, any creditor, or any direct, indirect or

incidental beneficiary except for the Bondholders, as set forth herein.

29.     Effectiveness. The rights and obligations of the parties under this Interim Order

shall be effective and enforceable as of the Petition Date. This Interim Order shall be deemed

effective immediately and, for the avoidance of doubt, Bankruptcy Rule 6004(h) shall not

apply hereto. If any or all of the provisions of this Interim Order are hereafter reversed,

modified, vacated or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the

validity, extent, priority, or enforceability of any obligations incurred prior to the actual receipt

of written notice by the Bond Trustee of the effective date of such reversal, modification,

vacatur, or stay, or (ii) the validity, extent, or enforceability of the liens and claims granted

hereunder.

30.     Notices. All notices, requests, demands, waivers, and other communications

required or permitted to be given under this Interim Order shall be in writing and shall be

deemed to have been duly given if (a) delivered personally, or (b) sent by email with a next-day or overnight mail or delivery:

      (a)     If to the Debtor to:

> Friendship Village of Mill Creek, NFP
> 350 West Schaumburg Road
> Schaumburg, IL 60194
> e-mail: notice@myfso.org

with a copy sent contemporaneously by email to:

> Stahl Cowen Crowley Addis LLC
> Attention: Bruce Dopke, Esq.
> 55 West Monroe Street, Suite 1200
> Chicago, IL 60603
> e-mail: bdopke@stahlcowen.com

      (b)     If to the Bond Trustee to:

> UMB Bank, N.A.
> Attn: Virginia A. Housum
> Senior Vice President
> 120 Sixth Street South
> Suite 1400
> Minneapolis, MN 55403
> e-mail: Virginia.housum@umb.com

with a copy sent contemporaneously by email to:

> Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
> Attn: Daniel S. Bleck, Esq.
> One Financial Center
> Boston, MA 02111
> e-mail: dsbleck@mintz.com

31.    <u>Notice of Final Hearing</u>. The Debtor shall, within two (2) business days after entry of this Interim Order, mail a notice of the entry of this Interim Order, together with a copy of the Motion and notice of the Final Hearing, to: (i) the United States Trustee for the Northern District of Illinois; (ii) the United States Attorney for the Northern District of Illinois; (iii) counsel for the Bond Trustee; (iv) the Debtor's other secured creditors; (v) the

Internal Revenue Service; (vi) the Illinois Department of Revenue; (vii) the United States Department of Health and Human Services; (viii) the Illinois Department of Human Services; (ix) the Authority; (x) the Centers for Medicare and Medicaid Services; (xi) the Illinois Department of Financial and Professional Regulation; (xii) the Illinois Department of Public Health; (xiii) the holders of the twenty largest unsecured claims against the Debtor; and; and (xiv) those who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002 (the "Notice Parties").

32.     Final Hearing; Objections. A final hearing to consider the Motion will be held on May 11, 2017 at 2:00 p.m. before the Honorable LaShonda A. Hunt, Courtroom 719 in Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois. Any party desiring to object to the relief sought in the Motion on a final basis shall file a written objection with the Court on or before May 9, 2017 at 4:00 p.m. and shall contemporaneously serve that objection on the Notice Parties so as to be received by such parties on or before such date.

Dated: _____, 2017

Chicago, Illinois

Order prepared by:

Bruce Dopke, Member (ARDC # 3127052)
Ronald A. Damashek (ARDC # 6183820)
Kevin V. Hunt (ARDC# 6283126)
Melissa J. Lettiere (ARDC # 6291738)
Stahl Cowen Crowley Addis, LLC
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Tel: 312-641-0060
Fax: 312-423-8189
email: bdopke@stahlcowen.com
v 12

_____
The Honorable _____
United States Bankruptcy Judge

23

**Greenfields of Geneva**
**Cash Collateral Budget**
**Schedule A to Cash Collateral Order**

| | Projected W/E 4/21/2017 | Projected W/E 4/28/2017 | Projected W/E 5/5/2017 |
|---|---|---|---|
| **Cash Receipts** | | | |
| Medicare (ACH) | $0 | $0 | $250,000 |
| Private Pay - AL & IL (ACH) | $367,513 | $0 | $0 |
| Private Pay - SNF (ACH) | $0 | $42,000 | $0 |
| Private Pay - AL, IL & SNF (Checks) | $0 | $100,000 | $50,000 |
| Other | $0 | $2,500 | $2,500 |
| **Total - Cash Receipts** | $367,513 | $144,500 | $302,500 |
| **Cash Disbursements** | | | |
| Office & Computer Supplies / Other | $0 | $5,000 | $5,000 |
| Plant Operations | $0 | $5,000 | $5,000 |
| Building and Equipment Repairs | $0 | $5,000 | $5,000 |
| Dining (Food Supplies) | $0 | $139,000 | $0 |
| Health Services (Supplies, Therapy) | $0 | $10,000 | $30,000 |
| Assisted Living (Supplies) | $0 | $500 | $1,000 |
| Payroll & Taxes | $0 | $205,000 | $0 |
| Return of Pre-Paid BK Payroll | $0 | ($250,000) | $0 |
| Benefits | $0 | $0 | $85,000 |
| Marketing | $0 | $0 | $7,500 |
| Insurance | $0 | $0 | $26,000 |
| Utilities incl. BK deposit | $0 | $42,560 | $10,000 |
| Management Fee | $0 | $0 | $35,000 |
| Mold remediation/Plumbing | $0 | $0 | $25,000 |
| Real Estate Tax | $0 | $0 | $0 |
| Quarterly U.S. Trustee Fees | $0 | $30,000 | $0 |
| Debtor's Legal - Stahl | $0 | $30,000 | $0 |
| Debtor's Legal - Retainer (Offset) | $0 | ($30,000) | $0 |
| Debtor's FA - SDLIC | $0 | $30,000 | $0 |
| Debtor's FA - Retainer (Offset) | $0 | ($30,000) | $0 |
| Committee Counsel - Legal | $0 | $15,000 | $0 |
| Notice - Donlin | $0 | $10,000 | $0 |
| Notice - Globex | $0 | $1,500 | $0 |
| Adequate Protection Payments | $0 | $0 | $0 |
| **Total - Cash Disbursements [A]** | $0 | $188,560 | $234,500 |
| **Net Cash Flow from Operations** | $367,513 | ($44,060) | $68,000 |
| **Cash Rollforward** | | | |
| Beginning Cash | $2,045,537 | $2,413,050 | $2,368,990 |
| Cash Increase (Decrease) | $367,513 | ($44,060) | $68,000 |
| Ending Cash Balance | $2,413,050 | $2,368,990 | $2,436,990 |

Footnote A - The HJ Sims "Success Fee" is not included the cash disbursements

## Schedule B

**Relating to the Loan Agreement**

Section 2.2(e) (relating to tax exemption)
Section 2.2(i) (relating to licenses and permits)

**Relating to the Master Trust Indenture**

Section 406(a), (b), (c), (i), (k) (relating to corporate existence and tax-exempt status)
Section 407 (related to insurance)
Section 410 (relating to damage or destruction)
Section 411 (relating to condemnation)

68298394v.1 ó (2)