IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| FRIENDSHIP VILLAGE OF | § | Case No.: 17-12470 |
| MILL CREEK, NFP, d/b/a | § | |
| GREENFIELDS OF GENEVA, | § | ***Hearing:***  12/21/2017 @ 10:30 a.m. |
| | § | |
| FEIN: 20-3300991, | § | |
| | § | |
| Debtor. | § | Hon. LaShonda A. Hunt |

**NOTICE OF MOTION AND FIRST AND FINAL APPLICATION OF
HERBERT J. SIMS & CO. INC., AS INVESTMENT BANKER TO THE
DEBTOR FOR COMPENSATION FOR SERVICES RENDERED AND
<u>REIMBURSEMENT OF EXPENSES</u>**

Please take notice that on Thursday, December 21, 2017 at 10:30 a.m., we will appear before the Honorable LaShonda A. Hunt, Judge of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, at the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn Street, Courtroom 719, Chicago, IL 60604, or such other judge as may be sitting in Judge LaShonda Hunt's place and stead, and then and there present the "First And Final Application of Herbert J. Sims & Co., Inc., As Investment Banker To The Debtor For Compensation For Services Rendered And Reimbursement Of Expenses," a copy of which is attached hereto and is hereby served upon you.

Dated: December 1, 2017

**Friendship Village of Mill Creek, NFP, d/b/a
GreenFields of Geneva**

By: /s/     Kevin V. Hunt
One of its attorneys

Bruce Dopke, Member (ARDC # 3127052)
Ronald A. Damashek (ARDC # 6183820)
Kevin V. Hunt (ARDC# 6283126)
Melissa J. Lettiere (ARDC # 6291738)
Stahl Cowen Crowley Addis LLC
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Tel: 312-641-0060
Fax: 312-423-8188
email: bdopke@stahlcowen.com
email: rdamashek@stahlcowen.com
email: khunt@stahlcowen.com
email: mlettiere@stahlcowen.com

## CERTIFICATE OF SERVICE

I, Kevin V. Hunt, an attorney, hereby certify that I caused to be served a complete and accurate copy of the attached Notice of Motion and the Final Fee Application of H.J. Sims & Co., Inc. as Investment Banker for the Debtor by causing a copy of the same to be sent: (a) electronically and through the Court's electronic delivery system, to those persons who are registered to receive electronic service of process in this case as indicated below, or (b) by email, sent on or before 5:00 p.m. Central Time on December 1, 2017 to the persons whose names appear below.   A courtesy copy of the referenced documents shall also be delivered to the Clerk.


/s/ Kevin V. Hunt


Electronic Notice in addition to that sent through the ECF system:

Gretchen Silver, Esq.
Kimberly Bacher, Esq.
Office of the U.S. Trustee, Region 11
Gretchen.Silver@usdoj.gov
Kimberly.Bacher@usdoj.gov

Charles Azano, Esq.
Daniel S. Bleck, Esq.
Bond Counsel
CWAzano@mintz.com
dsbleck@mintz.com

Jeffrey C. Dan
David K. Welch
Brian P. Welch
Bond Counsel – Local
jdan@craneheyman.com
dwelch@craneheyman.com
bwelch@craneheyman.com

Mark Fisher
Counsel for Illinois Finance Authority
mfisher@schiffhardin.com

Michael Kelly
US Attorney's Office
Michael.Kelly@usdoj.gov

Jeremy Johnson
Jerry Switzer
Jean Soh
Counsel for Friendship Senior Options
jeremy.johnson@polsinelli.com
jswitzer@polsinelli.com
jsoh@polsinelli.com

John Lipinsky
Counsel for Estate of Helen White
lipinsky@ccmlawyer.com

Richard Larsen
Counsel for Nancy Knight
rlarsen@springerbrown.com

Friendship Village of Mill Creek, NFP
e-mail: notice@myfso.org

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In Re  Friendship Village of Mill Creek, NFP,       )
　　　　d/b/a GreenFields of Geneva　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)　　Bankruptcy No. _____17-12470_____
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　Debtor.　　　　　)　　Chapter　　_____11_____

## COVER SHEET FOR APPLICATION FOR PROFESSIONAL COMPENSATION
## (IN CASES UNDER CHAPTERS 7, 11 AND 12)

Name of Applicant: _____Herbert J. Sims & Co., Inc._____

Authorized to Provide Professional Services to: _____the Debtor_____

Date of Order Authorizing Employment: _____May 11, 2017_____

Period for Which Compensation is Sought:
From _____April 20_____, ____2017____  through _____August 31_____, 2017

Amount of Fees Sought:  $ 425,700.00, of which $275,700.00 are unpaid

Amount of Expense Reimbursement Sought:  $ 5,513.00

This is an:　　Interim Application _____　　　Final Application ___✓___

If this is *not* the first application filed herein by this professional, disclose as to all prior fee applications:

| Date Filed | Period Covered | Total Requested (Fees & Expenses) | Total Allowed (Fees & Expenses) | Fees & Expenses Previously Paid |
|---|---|---|---|---|
| | | | | $ 150,000.00 |

Dated: _____December 1, 2017_____ 　　 _____Aaron Rulnick_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(Counsel)

(Rev 11/19/10)

**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| FRIENDSHIP VILLAGE OF | § | Case No.: 17-12470 |
| MILL CREEK, NFP, d/b/a | § | |
| GREENFIELDS OF GENEVA, | § | *Hearing:*   12/21/2017 @ 10:30 a.m. |
| | § | |
| FEIN: 20-3300991, | § | |
| | § | |
| Debtor. | § | Hon. LaShonda A. Hunt |

**FIRST AND FINAL APPLICATION OF HERBERT J. SIMS & CO. INC., AS
INVESTMENT BANKER TO THE DEBTOR FOR COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**

Herbert J. Sims & Co. Inc. ("Sims"), as investment banker to the Debtor hereby submits

its first and final application for compensation for services rendered and reimbursement of

expenses (the "Application") seeking a final allowance and payment for investment banking

services rendered to the estate.   In support of this Application, Sims respectfully states as

follows.

1.      Friendship Village of Mill Creek, NFP, d/b/a Greenfields of Geneva, as debtor

and debtor in possession (the "Debtor") filed this voluntary chapter 11 case (the "Case") on April

20, 2017.

2.      No official committee of creditors or equity holders was appointed in this Case by

the United States Trustee (the "UST").

3.      The Court entered an order on May 11, 2017 (Doc. 75) which authorized Sims to

serve as investment banker to the Debtor.

4.      This Application is filed pursuant to 11 U.S.C. §330, Federal Rule of Bankruptcy

Procedure 2016, this Court's published Local Rules, the national guidelines promulgated by the

United States Trustee and the "Order Granting Debtor's Motion for Administrative Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals (Doc. 55) (the "Procedures Order").

5.     By this Application, Sims respectfully requests final allowance of compensation for services rendered in the total amount of $425,700 of which $275,700 remains outstanding. Further, Sims requests approval for the reimbursement of actual and necessary expenses in the amount of $5,513.00.  The total payment of compensation and expense reimbursement requested herein is $280,513.00.

6.     On September 18, 2017, the Debtor filed its Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "Plan") (Doc. No. 163).

7.     The Plan was confirmed by this Court on October 26, 2017 (Doc. No. 200).

8.     The Plan became effective on November 17, 2017 (the "Effective Date").  The Debtor has duly filed a notice of the Effective Date (Doc. 210) and served notice of same on parties and interest.

9.     The Debtor now operates as the "Reorganized Debtor" for purposes of the Plan.

10.     Section 2.2 of the Plan contained the following provision concerning applications for final compensation filed in this Case by professionals appointed pursuant to Section 327 of the Bankruptcy Code:

**2.2 Professional Compensation**. Professionals or other Persons asserting a Claim for Accrued Professional Compensation for services rendered before the Effective Date must request payment for such Professional Compensation no later than thirty (30) days after the Effective Date. All such applications be in the form required by the "Order Granting Debtor's Motion for Administrative Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals" which was entered by the Court on May 4, 2017 (Docket. 55, hereafter, the "Fee Procedures Order"). Copies of such applications shall be served on the "Notice Parties" identified by that order, each of whom may object to any such final compensation applications within the time allowed by the Fee Procedures Order. The Court shall resolve any objections filed to any timely filed application

2

for Professional Compensation.  The Reorganized Debtor shall promptly pay any Allowed Claim for Accrued Professional Compensation from the reserves established for that purpose by this Plan, or, at its sole option, from funds of the Reorganized Debtor. For the avoidance of doubt, the Debtor shall be responsible for payment of the Professional Compensation payable pursuant to the Budget prior to the Effective Date, the Reorganized Debtor shall be responsible for payment of the holdback and other "end of case fees" as provided in the Budget.

Upon the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action, order or approval of the Bankruptcy Court.

11.     Sims is a leading investment banking and financial advisory firm led by 20 investment bankers that possess significant healthcare and capital markets experience. Sims maintains fourteen (14) locations in the United States.  In addition, Sims' bankers have extensive experience in all facets of the healthcare industry, including senior living.  The Debtor selected Sims as their investment banker because of its extensive and diverse experience, and knowledge, and its familiarity and experience in restructuring operators of senior care communities, its understanding of the many complex issues involved in these cases, and generally because the Debtor believed that Sims was well-qualified to provide the investment banking and financial advisory services in this case.

12.     The Debtor owns and operates a continuing care retirement community ("CCRC"), located in Geneva, Illinois, known as GreenFields of Geneva (the "Campus"). The Campus is improved with a building which includes (i) 147 independent living units, (ii) 51 assisted living units, (iii) 26 memory support assisted living units, (iv) 43 nursing beds, and (v) related common areas and parking. Approximately 270 senior citizens reside at the Campus.

13.     Sims was hired by the Debtor on October 25, 2016 to develop and implement a process (the "Sale Process") for the marketing of the Campus and related assets, either by means

of a Section 363 sale or through a plan of reorganization filed in a bankruptcy case to be commenced by the Debtor.

14.     Sims' payment arrangement for the services rendered was, from the beginning, different from other estate professionals.  As expressly disclosed in Sims' retention motion, Sims was to receive compensation for its efforts through (i) an initial $15,000.00 retainer (the "Retainer"); (ii) monthly $15,000 fees (the "Monthly Fees") payable thereafter, (iii) the reimbursement of its reasonable expenses related to the Sale Process ("Expenses") and (iii) a success fee payable upon the sale or other disposition of the Assets (the "Success Fee") equal to .65% of the amount bid for the Debtor's assets, minus 50% of the Monthly Fees paid to Sims during the Engagement  (Retention Motion, Doc. 9, pages 60 – 61 of 79; Supplement To Motion To Retain And Employ H.J. Sims & Co., Inc. As Investment Banker To The Debtor, Doc. 62, pp. 5 – 6 of 12).  A statement of the Retainer payments received by Sims, and a calculation of the Success Fee payable to Sims pursuant to its agreement with the Debtor is attached hereto as **Exhibit A**.

15.     The Rider to the Retention Agreement made it clear that the Retainer, the Monthly Fees and the Success Fee were to be paid, not by the Debtor, but by UMB Bank, not individually, but as trustee for bondholders which held approximately $100 Million of secured bond debt of the Debtor (the "Bond Trustee") (*See* Doc. 62, Rider (at pars. 3 and 5), pp. 10-11 of 12).  Accordingly, any allowances of compensation and reimbursement of costs and expenses which this Court may grant to Sims pursuant to this Motion will not be paid by the Debtor or the Reorganized Debtor.  Instead, those allowances will be paid by the Bond Trustee, which is ready, willing and able to pay such allowances.  A true Copy of Document 62 is attached hereto as Exhibit B.

16.     Pursuant to its engagement, Sims performed the following tasks:

a.      Established a comprehensive list of prospective Purchasers, draft a confidential information memorandum and confidentiality agreement, and create and populate a data room to be used by prospective bidders during the due diligence process and respond to questions or requests for additional due diligence information;

b.      Prepared and distributed a marketing package "teaser" to potential Purchasers to encourage the bidding process, host site visits for prospective Purchasers, and establish a process for first and final round of bids;

c.      Worked with a "Special Committee" of the debtor, composed of board members which did not serve on the boards of affiliates of the Debtor, to select an Initial Bidder; and

d.      After the Debtor's bankruptcy case commenced, and after the Court approved Sims' retention, Sims continued to market the Debtor's facility and encourage new bids or raised bids from qualified entities interested in purchasing the Debtor's assets and facility.

17.     By this Application, and as reflected in Exhibit A hereto, Sims respectfully requests final approval of compensation for services rendered in the total amount of $425,700.00 of which $275,700.00 remains outstanding.  This total amount consists of (a) $15,000.00 Upfront Retainer ($0 outstanding); (b) 135,000.00 in Monthly Fees through the Bid Deadline date of July 24, 2017 ($0 outstanding); and (b) $343,200.00 in Success Fees ($275,700.00 outstanding after a credit of $67,500.00 which is equal to 50% of Monthly Fees). Sims also requests approval for the reimbursement of actual and necessary expenses in the amount of $5,513.00 for the Application Period, of which $5,513.00 remains outstanding.

18.     During the Application Period, although a number of professionals worked on this engagement, the following primary professionals from Sims have performed substantial services to the Debtor in this case:  Aaron Rulnick, Managing Principal, Patrick Mallen, Assistant Vice President and Mackenzie Welch, Assistant Vice President.

19.      During this Case, Sims completed the Sale Process by performing the following tasks:

    a.    <u>Completion of the Marketing Process</u>: Sims completed the marketing process that was begun pre-petition for the sale of substantially all of the Debtor's assets or businesses, coordinating further meetings with management, creditors and other constituents, responding to a large number of due diligence requests and completing various other diligence-related activities for those parties that demonstrated interest in participating in an auction. As part of these diligence efforts, Sims coordinated with employees of the Debtor, the Debtor's various financial and legal advisors and representatives of the interested parties to ensure that all potential buyers were provided all necessary and appropriate information in a timely manner. Through daily contact with the various parties, Sims served a central role in providing all of the necessary information regarding the Debtor's business operations and other assets.

    b.    <u>Solicitation of Bids</u>: As a result of the marketing process, Sims successfully solicited qualified bids from several parties for various of the Debtor's assets and facility, resulting in the sale of the GreenFields of Geneva facility to the Initial Bidder.

20.      A detailed narrative description of the services provided by Sims in support of the Sale Process may be found in the Declaration of Aaron Rulnick, Docket No. 187, which is attached to this Application as **Exhibit C**.

21.      An itemization of those services, showing the dates and times and personnel engaged in those activities, is attached hereto as **Exhibit D**.

WHEREFORE, Sims requests that the Court enter an Order, substantially in the form of the Order filed in connection with this Motion, which (a) allows to Herbert J. Sims & Co., Inc. final compensation for investment banking services rendered to the Debtor in the amount of $425,700.00 (of which $275,700.00 remains unpaid), as well as reimbursement of actual and necessary expenses in the amount $5,513.00 for the Application Period; (b) authorizes the

payment of such allowances by the Bond Trustee, as provided in Applicant's Retention Agreement; and (c) for such further and additional relief as the Court deems just.

Dated:  December 1, 2017

HERBERT J. SIMS & CO. INC.

By:    Aaron Rulnick
       Managing Principal
       11140 Rockville Pike, Suite 550-H
       Rockville, MD 20852
       (301) 424-9135 (phone)
       (203) 418-9083 (fax)
       arulnick@hjsims.com
       *Investment Banker for the*
       *Debtor*

**GreenField of Geneva**

|   | | | |
|---|---|---|---|
| | **Retainer:** | $ | **15,000** |
| | | | |
| | **Monthly Fee:** | | |
| 1 | Nov. 2016 | $ | 15,000 |
| 2 | Dec. 2016 | $ | 15,000 |
| 3 | Jan. 2017 | $ | 15,000 |
| 4 | Feb. 2017 | $ | 15,000 |
| 5 | Mar. 2017 | $ | 15,000 |
| 6 | Apr. 2017 | $ | 15,000 |
| 7 | May 2017 | $ | 15,000 |
| 8 | June 2017 | $ | 15,000 |
| 9 | July 2017 | $ | 15,000 |
| | **Total Monthly Fee *(excluding retainer)*** | $ | **135,000** |
| | | | |
| | **Success Fee:** | | |
| | **0.65 basis point fee (of $52,800,000)** | $ | 343,200 |
| | | | |
| | Less (50% credit of monthly fee) | $ | (67,500) |
| | | | |
| | **TOTAL FEE EARNED BY HJ SIMS** | $ | 425,700 |
| | | | |
| | Less: Amount Paid to Date | $ | (150,000) |
| | | | |
| | **NET FEES DUE TO HJ SIMS** | $ | **275,700** |
| | | | |
| | **TRAVEL AND RELATED EXPENSES REIMBURSEMENT DUE TO HJ SIMS** | $ | **5,513** |
| | | | |
| | **NET AMOUNT DUE TO HJ SIMS** | $ | **281,213** |

**Exhibit A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| FRIENDSHIP VILLAGE OF | § | Case No.: 17-12470 |
| MILL CREEK, NFP, d/b/a | § | |
| GREENFIELDS OF GENEVA, | § | |
| | § | |
| FEIN: 20-3300991, | § | |
| | § | |
| Debtor. | § | Hon. LaShonda A. Hunt |

## SUPPLEMENT TO MOTION TO RETAIN
## AND EMPLOY H.J. SIMS & CO., INC.
## AS INVESTMENT BANKER TO THE DEBTOR

Friendship Village of Mill Creek, NFP, d/b/a GreenFields of Geneva (the "Debtor"),

debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Case"),

supplements its motion (the "Motion") to retain and employ H.J. Sims & Co., Inc. ("Sims") as

investment banker to the Debtor, by including, as an attachment to this supplement, an

unredacted and true copy of Sims' agreement to perform investment banking services for the

Debtor, which was referenced in paragraph 11 of the Motion.  This filing is intended to replace

the redacted version of the Retention Agreement which was attached to the original Motion as

**Exhibit B**.

Dated: May 9, 2017                    FRIENDSHIP VILLAGE OF MILL CREEK,
                                      NFP, Debtor and Debtor In Possession


                          By:  /s/ Bruce Dopke
                               Proposed counsel for the Debtor


-1-

EXHIBIT B TO FIRST AND FINAL FEE APPLICATION OF H.J. SIMS & CO., INC.

Bruce Dopke, Member (ARDC # 3127052)
Ronald A. Damashek (ARDC # 6183820)
Kevin V. Hunt (ARDC# 6283126)
Melissa J. Lettiere (ARDC # 6291738)
Stahl Cowen Crowley Addis, LLC
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Tel: 312-641-0060
Fax: 312-423-8189
email: bdopke@stahlcowen.com
email: rdamashek@stahlcowen.com
email: khunt@stahlcowen.com
email: mletierre@stahlcowen.com



2150 Post Road, Suite 301
Fairfield, CT 06824-5669
203.418.9000 phone
203.256.2377 fax
hjsims.com

October 25, 2016

Paul J. Schaffhausen, Chair
Special Committee
GreenFields of Geneva N.F.P.
0N801 Friendship Way
Geneva, IL 60134

Dear Paul:

This Letter of Agreement, when signed by you on behalf of Friendship Village of Mill Creek, NFP d/b/a GreenFields of Geneva ("GreenFields or the "Company"), together with the Rider attached hereto, will confirm the terms and conditions under which Herbert J. Sims & Co., Inc. ("Sims") will introduce GreenFields to qualified potential purchasers ("Purchasers"), interested in the purchase of the business and/or assets of the GreenFields retirement community facility located in Geneva, IL (the "Facility") and assist with the discussions and negotiations which may ultimately lead to the sale of the Facility (together, the "Transaction").

1.      **Services**

Upon written approval of GreenFields to proceed with the sale of the Facility, Sims shall have the right and shall use its best efforts to initiate, continue and conduct negotiations or other discussions with potential Purchasers on behalf of GreenFields with respect to a Transaction on the following timeline:

- By no later than November 4, 2016, Sims shall have (i) identified internally a preliminary list of prospective Purchasers; (ii) completed an initial draft of a confidential information memorandum (subject to review of GreenFields and UMB Bank, National Association, as successor bond trustee and successor master trustee (the "<u>Bond Trustee</u>")); and (iii) completed an initial draft of a form confidentiality agreement (subject to the review of the Bond Trustee).

- By no later than November 8, 2016, Sims shall have (i) confirmed the list of prospective Purchasers; (ii) created and distributed a summary sale "teaser;" (iii) finalized the confidential information memorandum; (iv) finalized the form confidentiality agreement; and

EXHIBIT B TO MOTION TO RETAIN H.J.SIMS & CO., INC.

(v) finalized the data room (all of the foregoing documents shall be subject to the prior review of GreenFields and the Bond Trustee).

- Sims shall establish a deadline for the first round of bids of no later than December 12, 2016.

- Sims shall establish a deadline for final bids of no later than January 10, 2017.

- Sims shall work with GreenFields (subject to the review and approval of the Bond Trustee) to select a stalking horse bidder by not later than January 27, 2017.

- Sims shall work with GreenFields to finalize an executed letter of intent with the stalking horse bidder (subject to the review and approval of the Bond Trustee) by not later than February 10, 2017.

- Sims shall work with GreenFields to draft and negotiate a proposed asset purchase agreement with the stalking horse bidder (subject to the review and approval of the Bond Trustee) by not later than February 17, 2017.

- Sims shall work with GreenFields to finalize the sale agreement with the stalking horse bidder (subject to the review and approval of the Bond Trustee) by not later than February 17, 2017.

In connection with the engagement, Sims shall perform such services as requested by GreenFields, including:

- Sims will familiarize itself with the operations and financial condition of Greenfields and the Facility, including but not limited to the facilities, assets, capital structure, occupancy and marketing status, appraisal values and current and projected statements of income, balance sheets and cash flows – this may also include preparation of a valuation model indicating acceptable values for the purchase of the Facility's assets and assist in developing an asking price and terms.

- In accordance with the deadlines set forth above, with the assistance of GreenFields, Sims will prepare an information package describing the facilities, operations, projected financial performance and other material aspects of the Facility, suitable for circulation to potential Purchasers. Dissemination of the information package will be subject to execution of written confidentiality agreements with prospective Purchasers to be coordinated by Sims working in conjunction with GreenFields. The information package, and any other sales and marketing materials related to the Facility, shall be subject to the review of the Bond Trustee.

- In accordance with the deadlines set forth above, Sims will solicit offers from interested Purchasers and at the request of and in collaboration with GreenFields, negotiate with interested parties and communicate the results of such negotiations to GreenFields. It is understood that Sims will be negotiating solely on behalf of GreenFields and cannot agree to any terms or accept any offer; such agreement or acceptance can be approved only by GreenFields with the consent of the Bond Trustee.

- In accordance with the deadlines set forth above, Sims will meet with GreenFields, its accountants, counsel and other designated individuals (including the Bond Trustee and its counsel) at reasonable times in order that implementation of any Transaction is considered and effected in a timely manner. Upon request and every two weeks, Sims will provide GreenFields and the Bond Trustee with a written update on the marketing effort and the status of any discussions with any potential buyers. Sims will provide the Bond Trustee with copies of any offers for the Facility at the same time as such offers are provided to GreenFields. Sims will also be available to the Bond Trustee, and its counsel, for discussions relating to the sale process as requested by the Bond Trustee or its counsel, independent of GreenFields, provided that GreenFields shall be given advance notice of any such meetings. Further, if such meetings require travel, the Bond Trustee shall pay Sims' reasonable fees (including Sims' legal and professional fees), costs and expenses associated with any such meetings from the Operating Reserve Fund (the "ORF") administered and maintained by the Bond Trustee with respect to GreenFields. Absent the consent of GreenFields (or the entry of an order of court having jurisdiction over the matter), the Bond Trustee and its counsel shall be bound to the same extent that any proposed purchaser of the Facility would be bound to keep the information and documentation which it may receive from Sims confidential (except the Bond Trustee may provide such information to the bondholders, provided that the bondholders will have committed in writing to keep that information confidential upon terms and conditions similar to those contained in the non-disclosure agreement previously agreed to by the bondholders and GreenFields). Without limiting the generality of the foregoing, the Bond Trustee and its counsel shall not share information received with respect to any bid made for the Facility with any person who is or potentially could be a bidder for the Facility.

## 2. Compensation

As compensation to Sims for its services as generally described above, GreenFields shall pay or cause to pay: (1) an initial retainer of $15,000; and (2) a fee of $15,000, payable (in cash) monthly in advance (the "Monthly Fee"). 50% of the Monthly Fee will be applied as a credit towards the Success Fee, as described below.

GreenFields shall also pay or cause to pay a "Success Fee" defined as follows: (1) if the Sale Price is equal to $56,550,000 (the "Threshold Amount") or less, then Sims will receive a commission equal to 0.65% of the Sale Price, payable (in cash) at the first closing of the Transaction, regardless of whether the purchase price is paid in cash, notes or in any other form (including an assumption of a portion of the outstanding bonds) and (2) If the Sale Price exceeds the Threshold Amount, then Sims will receive a

3

commission that equals the sum of: (a) $367,575, plus (b) 2.5% of the difference between: (i) the Sale Price; and (ii) the Threshold Amount. The Success Fee, to the extent owed, shall be paid solely from proceeds received from the Transaction.

Subject to review and approval of GreenFields and the Bond Trustee, GreenFields agrees to authorize the Bond Trustee to pay (from the ORF) all of the reasonable out-of-pocket expenses incurred by Sims in regard to its activities as described above, including but not limited to the costs of travel, lodging, postage and express mail, document production and costs of Sims' counsel, if applicable. Sims will provide GreenFields and the Bond Trustee with a detailed summary of out-of-pocket expenses at the time of billing. GreenFields shall be responsible for all of its costs and expenses associated with this engagement or any Transaction, including but not limited to fees and expenses of Sims' counsel.

If a Transaction occurs within twelve (12) months after the termination of Sims' engagement with any party introduced by Sims or introduced to Sims by GreenFields during the term of the engagement, all compensation as described above will be payable to Sims. Whether or not this agreement is terminated by Sims or by GreenFields or the term of Sims' engagement has expired without a Transaction having been closed, all out-of-pocket expenses incurred by Sims through the date of termination will be payable. Under such circumstances, such amounts shall be paid solely from proceeds received from a Transaction. Any expenses requested by Sims in accordance with this paragraph are subject to review and approval of GreenFields and the Bond Trustee.

GreenFields will cooperate with Sims in effecting any Transaction, and will promptly refer any potential purchaser who has made an inquiry or whom GreenFields has contacted about a potential Transaction to Sims.

## 3. Disclosure of Information

GreenFields will furnish Sims with, or cause to be furnished to Sims, such information concerning the Facility as Sims reasonably requests in connection with this engagement. GreenFields covenants that such information will not intentionally contain any untrue statement of material fact or omit to state any material fact necessary in order to make the statement therein not misleading in light of the circumstances under which statements are made. GreenFields recognizes and confirms that Sims (a) will rely solely on such information and other information available from generally recognized public sources in performing the services contemplated hereunder; (b) will not undertake independent verification thereof, and does not assume responsibility for the accuracy or completeness of such information; (c) will not, unless otherwise specifically engaged to do so under separate agreement and for an additional fee, make or obtain any appraisal of company assets; and (d) will make appropriate disclaimers consistent with the foregoing in dealing with third parties.

4

## 4. Non-Disclosure

GreenFields acknowledges that all opinions and advice (written or oral) given by Sims to GreenFields in connection with the Sims' engagement is intended solely for the benefit and use of GreenFields (including its management, directors and attorneys) in considering any Transaction, and GreenFields agrees that no such opinions or advice shall be used to for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, nor shall any public reference to Sims be made by GreenFields (or such persons), without the prior written consent of Sims.

Sims agrees not to divulge, communicate or disclose, except as may be required by law or for the performance of any agreement entered into by the parties, or use to the detriment of GreenFields, or for the benefit of any other person or persons or misuse in any way, any confidential information or trade secrets concerning the subject matter hereof, including personnel information, know-how, patient lists, financing, reimbursement or other information.

## 5. Arbitration

Any dispute, controversy or claim arising out of or relating to this agreement or engagement shall be settled by binding arbitration held in Connecticut in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect. If the matter in controversy (exclusive of fees and expenses) shall appear, as at the time of the demand for arbitration, to exceed Fifty Thousand Dollars ($50,000), then the panel to be appointed shall consist of three neutral arbitrators; otherwise, one neutral arbitrator. Any arbitrator chosen shall be either an attorney, accountant or investment banker experienced in transactions such as the Transaction. The arbitrator(s) shall allow such discovery as the arbitrator(s) determine appropriate under the circumstances and shall resolve the dispute as expeditiously as practicable, and if reasonably practicable, within one hundred and twenty (120) days after the selection of the arbitrator(s). The arbitrator(s) shall give the parties written notice of the decision, with the reasons therefore set out, and shall have thirty (30) days after the decision to reconsider and modify such decision if any party so requests within ten (10) days after the decision. Sims and GreenFields shall use its respective best efforts to maintain complete confidentiality with respect to, any controversy or claim, except as authorized in writing by the other party or as necessary to the prosecution or defense thereof.

The arbitrator(s) shall have authority to award relief under legal or equitable principles, including interim or preliminary relief, and to allocate responsibility for the costs of the arbitration and to award recovery of attorneys' fees and expenses in such manner as is determined to be appropriate by the arbitrator(s). Judgment upon award rendered by the arbitrator(s) may be entered in any court having *in personam* and subject matter jurisdiction. Sims and GreenFields hereby submit to the *in personam* jurisdiction of the Federal and State courts in Connecticut for the purpose of confirming any such awards and entering judgment thereon.

5

The foregoing provisions of this paragraph 6 shall survive any termination of the engagement provided by this letter.

## 6. Miscellaneous

This agreement embodies the entire agreement and understanding of the parties hereto and supersedes all prior agreements and understandings, written and oral, relating to the subject matter hereof, and may not be modified or amended or any term or provision hereof waived or discharged, except in writing, signed by the party against whom such modification, waiver or discharge is sought to be enforced. This agreement is not assignable by either party without the prior written consent of the other party.

Each of Sims and GreenFields represents that this agreement has in all respects been duly authorized, executed and delivered by and on behalf of itself. Nothing in this letter or engagement shall limit Sims' ability to consult and conduct business for and with others, including competitors of GreenFields, and to engage in activities similar to those contemplated hereunder whether for its own account or for the account of others or buy, sell or hold securities in or for others. All rights and obligations in connection herewith shall be interpreted, construed and enforced in accordance with and governed by the applicable laws of the State of Connecticut. Sims may refer to the Transaction in traditional "tombstone" announcements or any of its professional materials after the closing of any Transaction.

## 7. Termination

This agreement may be terminated by either party, upon 30 days' prior written notice to the other party, provided that GreenFields agrees not to terminate this agreement for a period of one year from the date hereof, if at the time of such termination GreenFields intends to engage another firm to provide substantially the same services as Sims has agreed to provide hereunder.

We appreciate the opportunity to serve you in this matter and look forward to proceeding on your behalf. If the terms and conditions outlined above are acceptable, please execute and return one copy of this letter and retain the other for your records.

Very truly yours,

**HERBERT J. SIMS & CO., INC.**

By: _____
   Aaron M. Rulnick
   Managing Principal

6

AGREED AND ACCEPTED:

**GREENFIELDS OF GENEVA**

By: _____
     Paul J. Schaffhausen, Chair
     Special Committee of the Board of
     Friendship Village of Mill Creek, NFP

59911457v.3

7

RIDER

This Rider (the "Rider") forms part of the letter agreement (the "Agreement") dated October 25, 2016 between Herbert J. Sims & Co., Inc. ("HJS") and Friendship Village of Mill Creek, NFP, d/b/a GreenFields of Geneva ("GreenFields"). Capitalized terms not otherwise defined herein have the meanings given to them in the Agreement. In the event of an inconsistency between the terms of the Agreement and the terms of this Rider, the terms of this Rider shall govern.

1.      The Facility is encumbered by a mortgage and a UCC security interest which secures tax exempt bonds which were issued in 2010 by the Illinois Finance Authority (the "Bonds"). The proceeds of the Bonds were used to fund the construction of the Facility and fund certain reserves maintained by the trustee (the "Bond Trustee") of the master trust indenture which administers payments to the bondholders and holds mortgage and UCC liens on the Facility. At present, approximately $97,000,000.00 remains due on the Bonds.

2.      HJS will begin to market the Facility immediately after the Agreement is finalized and the confidential memorandum concerning the sale of the Facility is prepared by HJS. Subject to HJS' discretion, HJS will solicit letters of intent from potential purchasers. Potential purchasers who are qualified (under criteria to be determined by GreenFields with the advice and recommendation of HJS, and subject to the consent of the Bond Trustee) may conduct site visits to the Facility to be supervised by HJS. After the site visits are completed, HJS will solicit final offers from entities which participated in the site visits. GreenFields, with the advice and recommendation of HJS, and subject to the consent of the Bond Trustee, will designate one of the final bids as the highest and best bid (the "Stalking Horse Bid"). Once the Stalking Horse Bid is identified, GreenFields and HJS will use their best efforts to bring the Stalking Horse Bid to contract (the "Contract"). The Contract shall be subject to the approval of the Bond Trustee. Subject only to modifications which may be made by the bankruptcy court, the Contract will specify the terms of the sale. Following completion of the Contract, and the receipt from the Bond Trustee of a consent and approval of the Contract, GreenFields shall commence a chapter 11 bankruptcy case (the "Case") which will afford bidders the opportunity to again bid on the Facility as part of an auction (the "Auction") (subject to certain protection for the party submitting the Stalking Horse Bid to the extent approved by the bankruptcy court). The successful bidder at the Auction shall be presented to the bankruptcy court for approval.

3.      The Agreement is subject to the Bond Trustee's advance written approval, which shall include the Bond Trustee's:

a.      consent to pay from the sale proceeds received from the Auction (the "Proceeds") the Success Fee, the customary and reasonable costs and pro-rations of the sale, and any unpaid fees and costs incurred by HJS which remain unpaid at closing, each on the terms set forth more fully in the Agreement; and

1

      b.      consent to honor GreenFields' requests to pay the Retainer (as defined in the Agreement) and expenses due to HJS from the Operating Reserve Fund maintained by the Bond Trustee (the "ORF") on the terms set forth in the Agreement.

4.      In addition to the other restrictions set forth in the Agreement or the Contract, no bid for the Facility, including a credit bid from the Bond Trustee, shall be deemed to be a qualified bid unless the bidder agrees that it will assume (under 11 U.S.C. §365) all residency agreements which are in place at the Facility at Closing, together with all future service obligations associated with those residency agreements.

5.      After the Case is filed, GreenFields will promptly file a motion which seeks court approval of HJS' employment as well as authority to pay monthly retainer and expense reimbursements due to HJS from the ORF (to the extent that authority is needed from the bankruptcy court to make payments from the ORF), in each case subject to the terms of a budget to be entered in connection with GreenFields' proposed use of cash collateral. The compensation and expense reimbursement due to HJS will be subject to the bankruptcy court's approval of HJS' motion for final compensation in the Case, and shall be paid solely from the Proceeds.

6.      Friendship Senior Options, NFP ("FSO") serves as the sole member and manager of GreenFields. FSO has authorized the board of directors which serves GreenFields to form a special committee of the board (the "Special Committee") to implement the decision to sell the Facility. HJS will work directly and exclusively with the Special Committee and GreenFields' bankruptcy counsel on all matters which concern the sale process outlined above and in the Agreement.

7.      The sale shall not offer for sale any cash, cash equivalents, deposits or similar assets held by GreenFields or the Bond Trustee. All other assets owned by GreenFields shall be offered for sale.

8.      The confidentiality provisions of the Agreement shall cease to apply when the Case is filed, because the Agreement itself will have to be approved by the bankruptcy court through a public process. In addition, and notwithstanding any contrary provision of the Agreement, GreenFields shall be allowed to disclose and discuss the provisions of this Agreement with:

      a.      the Bond Trustee and its professionals;

      b.      residents and staff at GreenFields, to reassure residents and staff that the terms of the residency agreements at the Facility will remain in effect; and

    c.    FSO, as such disclosure is necessary in order to provide residents and staff with clarity, prior to the commencement of the Case, with respect to the future of the Facility, the management of the facility, and specifically, the agreement of GreenFields and the Trustee that all residency agreements at the Facility will be honored throughout and at the conclusion of the sale process.

    9.    The arbitration and venue provisions of the Agreement shall have no effect once the Case is filed, at which time the bankruptcy court and any tribunal with appellate jurisdiction over the decisions of the bankruptcy court shall have sole and exclusive venue and subject matter jurisdiction over the Agreement and any claim or controversy which arises from the Agreement.

Dated: October 25, 2016

    HERBERT J. SIMS & CO., INC.

By: _____

    Aaron M. Rulnick
    Managing Principal

    FRIENDSHIP VILLAGE OF MILL CREEK, NFP

By: _____

    Paul J. Schaffhausen, Chair Special
    Committee of the Board and
    authorized person

3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| FRIENDSHIP VILLAGE OF | § | Case No.: 17-12470 |
| MILL CREEK, NFP, d/b/a | § | |
| GREENFIELDS OF GENEVA, | § | |
| | § | |
| FEIN: 20-3300991, | § | |
| | § | |
| Debtor. | § | Hon. LaShonda A. Hunt |

## DECLARATION OF AARON RULNICK IN SUPPORT OF THE CONFIRMATION OF THE AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FILED BY FRIENDSHIP VILLAGE OF MILL CREEK, NFP AND FRIENDSHIP SENIOR OPTIONS, NFP

I, Aaron Rulnick, make this Declaration pursuant to 28 U.S.C. § 1746:

1.      I submit this declaration (this "Declaration") in support of the confirmation of the Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code" (Doc. 163, hereinafter, the "Plan") filed by Friendship Village of Mill Creek, NFP, d/b/a GreenFields of Geneva, debtor and debtor in possession herein (the "Debtor") and by Friendship Senior Options, NFP ("FSO"), the Debtor's corporate manager.

2.      The statements in this Declaration are based on my personal knowledge or opinion, on information that I have from the Debtor's books and records, the employees of FSO who work at the Campus, the Debtor's advisors, and from my direct involvement in the management of a sale process relative to the Debtor's property described in more detail below.

3.      I am over the age of 18 years and authorized to submit this declaration on behalf of the Debtor and FSO.  If I were called upon to testify, I could and would competently testify to the facts set forth herein.

1

EXHIBIT C TO FIRST AND FINAL APPLICATION OF H.J. SIMS & CO.

4.     I am familiar with the terms of the Plan and the Second Amended Disclosure Statement In Support of the Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code" (Doc. 161, hereafter, the "<u>Disclosure Statement</u>") which were filed of record by the Debtor and FSO in this Case, as well as with the pre- and post-petition process for the sale or other disposition of the Debtor's assets.

5.     I serve as co-leader of the investment banking team at H.J. Sims & Co., Inc. ("<u>Sims</u>") and serve on the firm's operating committee and board of directors.

6.     The Debtor owns and operates a continuing care retirement community known as GreenFields of Geneva, consisting of (i) 147 independent living units, (ii) 51 assisted living units, (iii) 26 memory support assisted living units, (iv) 43 nursing beds, and (v) related common areas and parking (the "<u>Campus</u>").

7.     Approximately five months before the commencement of the present Chapter 11 case, the Debtor and the Bond Trustee agreed to a process by which the Campus and certain of the Debtor's other assets (collectively, the "Assets") should be marketed and offered for sale or other transfer (the "Sale Process") which included an initial marketing effort to be made before the commencement of the Debtor's Case, followed by a further and final marketing effort which was to continue after this Case commenced.

8.     Sims was retained by the Debtor as of October 25, 2016, and was charged with taking all steps necessary to implement the Sale Process.

9.     Following its retention, Sims prepared an initial offering document and established a data room for third parties to conduct due diligence concerning the Assets. After completing the marketing materials and assembling the data room, Sims went out to market on November 22, 2016 and contacted more than 90 parties as potential acquirers of the Assets. The Sale Process

contemplated that Sims would encourage all interested parties to submit an initial bid for the Assets

in December of 2016. Parties who submitted contending bids, after additional due diligence, would

have an opportunity to submit a second bid. That second bid would have the potential to be

designated as an "initial" bid which would be presented to this court (after the commencement of

the present Case) as an initial bid in a public auction conducted pursuant to 11 U.S.C. §363 or in

a plan of reorganization, depending on the requirements of the high bid.

      10.    From the inception of the Sale Process, I was aware that FSO intended to participate

as a bidder in the Sale Process. I was further made aware that to facilitate FSO's participation as

a bidder in the Sale Process, a special committee (the "Special Committee") of the Debtor's board

was formed from members of that board who did not serve on the boards of the Debtor's affiliates

and had no material business dealings with FSO or its affiliates, apart from their service on the

Debtor's board. In all of my activities relative to the Sale Process, my contacts, for discussion and

decisions relative to the management of the Sale Process, were limited to the Debtor's counsel and

the Special Committee. My interactions with FSO were strictly limited to (i) my specific requests

for information needed for the data room or to respond to questions raised by other prospective

bidders (ii) to coordinate and have appropriate staff available for questions during site visits; and

(iii) my interactions with FSO concerning its bid, which were no different from my interactions

with all of the other prospects who I worked with during the Sale Process.  With respect to these

information requests, my contacts were Mr. Mike Flynn at FSO and James Holbrook, the

Executive Director at GreenFields, who were always responsive and helpful to my information

requests.

      11.    Sims completed or assisted in the following tasks related to the implementation of

the sales process which occurred before this Case commenced:

- by November 4, 2016, Sims prepared a preliminary list of prospective purchasers, an initial draft of a confidential information memorandum concerning the Campus and an initial draft of a form confidentiality agreement which prospective bidders were to sign in order to gain access to detailed information concerning the Campus;

- by November 22, 2016, Sims finalized its list of prospective purchasers, distributed a summary sale "teaser" to more than 90 prospective purchasers, finalized the confidential information memorandum and the form of confidentiality agreement, and completed the assembly of a digital "data room" which could be accessed by prospective purchasers;

- 36 prospects signed the Confidentiality Agreement and were granted access to the electronic data room between November 22, 2016 and June 27, 2017;

- by December 22, 2016, Sims received five first round bids from prospective purchasers;

- by December 23, 2016, the Special Committee, after consultation with Sims, identified three candidates from the first round of bidding who submitted the highest and best offers and would be invited to participate in site visits at the Campus;

- on January 10 and 11, 2017, Sims led site visits at the Campus for two of the three bidders for the Campus (the third bidder was FSO, which did not require a site visit); and

- by January 20, 2017, Sims received final bids from the finalists.

12.     Prior to the commencement of the this Case, the Special Committee of the Debtor, after discussions and consultation with Sims, designated the bid which was made by FSO to be the "initial bid" in the portion of the Sale Process which was scheduled to occur after this Case was filed.  The Sale Process contemplated that once the "initial bid" was designated by the Special Committee, the Debtor would, among other things, prepare and commence this Case and ultimately present the "initial bid" as the first bid in a court supervised process competition in which the highest bid would have the right to acquire (or retain) the Assets either by means of an auction conducted under Section 363 of the Bankruptcy Code, or through under a plan of reorganization co-sponsored by the Debtor and the successful (and high) bidder.

4

13.     After the Debtor's bankruptcy case commenced, and after the Court approved

Sims' retention, Sims continued to perform its duties under the Retention Agreement, including:

- generally continuing Sims' efforts to market the Campus and encourage new bids or raised bids from qualified entities interested in purchasing the Campus;
- generally continuing to maintain and update the electronic data room from which prospective bidders may obtain information concerning the Assets;

- On April 23, 2017, the preliminary Bid Procedures were sent directly to the organizations that had submitted bids in the pre-chapter 11 rounds of bidding;

- Follow up calls were placed that week to the first round bidders;

- On April 24, 2017, an email blast was sent to over 90 prospective bidders announcing that the Debtor had filed a Chapter 11 case and that the preliminary Bid Procedures and other information regarding the Debtor could be accessed via the data room once a confidentiality agreement was executed. Throughout this process, the list of prospective bidders grew to over 110;

- Direct calls were placed the week of April 24, 2017 to investment bankers at Ziegler Capital Management, BB&T, Cain Bros. and Piper Jaffray to raise awareness of bid process, offer to walk through the Bid Procedures, and determine if those firms had clients who may be interested in bidding;

- On May 19, 2017, an email blast was sent to the universe of prospects indicating that the Court had approved the Bid Procedures;

- Site visits were conducted at the Campus show the Campus to these prospective bidders:

  - Senior Quality Lifestyle Corp - Jan 10, 2017
  - Lifespace Communities – Jan 11, 2017
  - Senior Care Development – June 29, 2017
  - Covenant Retirement Communities – May 22, 2017 and June 29, 2017;

- On June 12, 2017, an email blast was sent to the universe of prospects as a reminder of the final bid submission deadline of July 19, 2017;

- On June 20, 2017, an email reminder was sent to representatives from the senior living investment banking firms as a reminder of the final bid submission deadline of July 19, 2017;

- On July 10, 2017, an email blast was sent to the universe of prospects and investment bankers as a final reminder of the bid submission deadline; and

5

- Follow up calls were made to 116 prospects between June 9, 2017 and July 24, 2017 inquiring any interest for the acquisition opportunity.

14.     As of the date of the July 24, 2017 Bid Deadline set by the Court, no party submitted a bid for the Campus, except for the previously tendered bid made by FSO. Accordingly, based on my role in the Sale Process, and based upon my expertise, I believe the offer submitted by FSO represents the highest and best offer for the Debtor's assets.

I have made the foregoing statements under penalty of perjury on this 25th day of October, 2017.

_____
Aaron Rulnick

Prepared by:

Bruce Dopke, Member (ARDC # 3127052)
Kevin V. Hunt (ARDC# 6283126)
Stahl Cowen Crowley Addis, LLC
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Tel: 312-641-0060
Fax: 312-423-8189
email: bdopke@stahlcowen.com
email: khunt@stahlcowen.com
v5

6

Time Tracking Log
GreenFields of Geneva

Name:        Aaron Rulnick                                    **Exhibit D**
Company:     HJ Sims
Date:        1-Dec-17
Project:     GreenFields of Geneva
Initials: Aaron Rulnick - AR; Patrick Mallen - PM; Sonia Carrero - SC; Mack Welch - MW

| Date | Hours | Minutes | Initials | Description |
|------|-------|---------|----------|-------------|
| 24-Aug-16 | 1 | | AR | draft GreenFields schedule |
| 20-Sep-16 | 1 | | AR | finalize GreenFields timeline |
| 21-Sep-16 | 1 | | AR | review GreenFields timeline with Bruce Dopke |
| 2-Nov-16 | 2 | | AR | preparing teaser, bidders list, NDA |
| 2-Nov-16 | 1 | 30 | AR | conference call with Special Committee to review OM ad and Bid list |
| 4-Nov-16 | 1 | | AR | e-mail received by Bruce Dopke - review GreenFields Executive Summary - Forbearance Agreement |
| 7-Nov-16 | 4 | 46 | AR | review GreenFields contract and rider |
| 14-Nov-16 | 0 | 52 | PM | Review Draft Teaser |
| 15-Nov-16 | 2 | 41 | PM | Updated Offering Memorandum. Review maps and Investor Report. |
| 16-Nov-16 | 2 | 24 | AR | Updated Offering Memorandum |
| 16-Nov-16 | 2 | | AR | transfer from home to airport |
| 16-Nov-16 | 2 | 5 | AR | Southwest 1397 from DCA to MDW - Conf. BZ7OXT |
| 16-Nov-16 | 1 | | AR | transfer from Midway airport to GreenFields site |
| 16-Nov-16 | 4 | | AR | GreenFields of Geneva Site Visit and Committee members meeting |
| 16-Nov-16 | 1 | | AR | transfer from GreenFields to Midway airport |
| 16-Nov-16 | 1 | 45 | AR | Southwest 2656 from MDW to DCA Conf. BZ7OXT |
| 16-Nov-16 | 1 | | AR | transfer from airport to home |
| 18-Nov-16 | 0 | 10 | AR | Updated Offering Memorandum |
| 21-Nov-16 | 0 | 15 | PM | Created Virtual Data Room |
| 23-Nov-16 | 2 | 47 | AR | Updated Offering Memorandum |
| 28-Nov-16 | 3 | 5 | AR | Updated Offering Memorandum |
| 30-Nov-16 | 1 | 36 | AR | Updated Offering Memorandum |
| 1-Dec-16 | 0 | 9 | AR | Updated Offering Memorandum. Review uploaded files |
| 8-Dec-16 | 1 | 11 | PM | Construction and Remediation documents |

Time Tracking Log
GreenFields of Geneva

| Date | Hours | Minutes | Initials | Description |
|---|---|---|---|---|
| 6-Dec-16 | 4 | | SC | Making follow up calls with prospect bidders: (American Baptist Homes of the Midwest, Asbury Communities, Ascension Health, Brookdale Senior Living, Christian Homes, Inc, Concordia Lutheran Ministries, Continuing Life Communities, Covenant Retirement Communities, Ecumen, Erickson Living, Evangelical Lutheran Good Samaritan Society, Haverland Carter Lifestyle Group, Juniper Communities, Life Care Services, Lutheran Life Ministries, Lutheran Senior Services, Mather LifeWays, Meridian Senior Living, National Church Residences, Northwestern Memorial Health Care, Oakwood Lutheran Senior Ministries, Ohio Presbyterian Retirement Services and Pacifica Mgmt.) |
| 8-Dec-16 | | 30 | AR | Conference call with Axel Guerra and Mitch Ritschel - Kisco SeniorLiving - Investment Analysts |
| 9-Dec-16 | | 30 | AR | conference call with Bruce Dopke |
| 9-Dec-16 | | 30 | AR | conference call with Dan Lahey - LCS |
| 13-Dec-16 | | 30 | AR | conference call with Dana Fusaris - Fundamental Advisors |
| 19-Dec-16 | | 30 | AR | conference call with Denise de Fiebre and Brett Mehlman - Senior Care Development |
| 20-Dec-16 | | 30 | AR | conference call with Matthew Caine - Solic Capital |
| 21-Dec-16 | | 30 | AR | conference call with Axel Guerra - Kisco Senior Living - Investment Analyst |
| 22-Dec-16 | 1 | | AR | Review material related to DEADLINE LOIs |
| 23-Dec-16 | 1 | 30 | AR | conference call with Bruce Dopke - lawyer and Matthew Caine - Solic Capital to review initial LOIs |
| 5-Jan-17 | | 30 | AR | conference call with Matthew Caine - Solic Capital |
| 5-Jan-17 | | 30 | AR | conference call to prepare for site visit |
| 9-Jan-17 | 2 | | AR | transfer from office to airport |
| 9-Jan-17 | 2 | | AR | Southwest 3886 from DCA to MDW Conf. B6ZYJC |
| 10-Jan-17 | 1 | | AR | transfer from MDW airport to GreenFields |
| 10-Jan-17 | 3 | | AR | site visit with SQLC team |
| 10-Jan-17 | 3 | | AR | dinner with Stan Waterhouse and team - SQLC to for Q&A of GreenFields site visit |
| 11-Jan-17 | 3 | | AR | site visit with LifeSpace Communities team |
| 11-Jan-17 | 1 | 30 | AR | lunch with James Holbrook and Mike Flynn to review and coordinate follow-up due diligence requests from site visits |
| 11-Jan-17 | 1 | | AR | transfer from GreenFields to Midway airport |
| 11-Jan-17 | 3 | | AR | Southwest 2230 from MDW airport to FLL Conf. BOGYJK |

Time Tracking Log
GreenFields of Geneva

| Date | Hours | Minutes | Initials | Description |
|------|-------|---------|----------|-------------|
| 11-Jan-17 | 1 | | AR | transfer from airport to hotel |
| 19-Jan-17 | | 30 | AR | conference call with Jeremy Johnson-Polsinelli |
| 20-Jan-17 | 1 | | AR | Review material related to FINAL BID DEADLINE |
| 23-Jan-17 | | 30 | AR | conference call with Jodi Bleier, Larry Smith, Jodi Hirsch - LifeSpace Communities |
| 27-Jan-17 | 2 | | AR | conference call with GreenFields Bondholders to review bids |
| 31-Jan-17 | | 30 | AR | call w/Rich Scanlon - Ziegler Investment Banking |
| 1-Feb-17 | | 45 | AR | call w/ Jeremy Johnson for Q&A |
| 1-Feb-17 | | 45 | AR | call w/ Jodi Bleier - LifeSpace for Q&A |
| 3-Feb-17 | | 30 | AR | conference call with Daniel Bleck and Charles Azano - Mintz, Bruce Dopke-lawyer and David Fields-RBC Capital Markets |
| 7-Feb-17 | 1 | | AR | Review material related to FINAL BID SELECTION DEADLINE |
| 8-Feb-17 | | 30 | AR | call w/ Bruce Dopke |
| 21-Feb-17 | 1 | | AR | Review materials related to HIGH BID - LOIs DEADLINE |
| 23-Feb-17 | 3 | 30 | AR | Bondholder's meeting |
| 28-Feb-17 | 2 | | AR | Review documents related to STALKING HORSE CONTRACT DEADLINE |
| 3-Mar-17 | | 30 | AR | call w/ Tom Brod |
| 6-Mar-17 | | 30 | AR | call w/Jeremy Johnson-Polsinelli, Michael Armstrong, Paul Towell- Hamlin Advisors and Joseph Bridy |
| 14-Mar-17 | 1 | | AR | Review of material related to STALKING HORSE CONTRACT SIGNATURE DEADLINE |
| 21-Mar-17 | 2 | | AR | Review documents related to CHAPTER 11 FILING |
| 4-Apr-17 | | 30 | AR | call w/David Fields |
| 10-Apr-17 | | 30 | AR | call w/Matt Caine-Solic Cap |
| 18-Apr-17 | 1 | | AR | Updated Offering Memorandum |
| 19-Apr-17 | 3 | | AR | Updated Offering Memorandum |
| 21-Apr-17 | 0 | 6 | AR | Updated Offering Memorandum. Review uploaded files |
| 21-Apr-17 | 1 | 30 | AR | Prepare and Distribute e-mail blast with bid procedures |
| 23-Apr-17 | | 5 | AR | Sent proposed Bid Procedures to Tom Brod at Lifespace |
| 23-Apr-17 | | 5 | AR | Sent proposed Bid Procedures to David Laffey and Dan Lahey at LCS. Dan Lahey's email response on 4/24/17 @ 9:16am "We will review but I would say we are unlikely to engage at that price". |
| 23-Apr-17 | | 5 | AR | Sent proposed Bid Procedures to Stan Waterhouse at SQLC. Stan Waterhouse's email response on 4/24/17 @ 9:23am. "thanks for keeping SQLC in the loop, I will review the information and consider our interest". |
| 23-Apr-17 | | 5 | AR | Sent proposed Bid Procedures to Denise deFiebre at Senior Care Development |

Time Tracking Log
GreenFields of Geneva

| Date | Hours | Minutes | Initials | Description |
|------|-------|---------|----------|-------------|
| 24-Apr-17 | | 5 | AR | Sent email blast to initial buyers list (91 organizations/companies) |
| 25-Apr-17 | 3 | 0 | PM | Updated Offering Memorandum. Review uploaded files |
| 25-Apr-17 | 1 | | SC | Granting access to dataroom to: American Eagle Life Care, Christian Homes, Inc, Concordia Lutheran Ministries, LifeSpace Communities, Otterbein Senior Lifestyle, Pathway Senior Living, Pacific Retirement Services, Senior Star Living and Solera Senior Living, |
| 26-Apr-17 | | 15 | AR | Sent email blast to additional buyers list (13) from SOLIC |
| 26-Apr-17 | | 15 | AR | Spoke with Brian Dowd at Evergreen Senior Living Group to answer questions about bid procedures and other general questions. Interested. |
| 26-Apr-17 | | 15 | AR | Spoke with Doug Allen at Senor Star Living to answer questions about bid procedures and other general questions. Interested; have another community in the market. |
| 26-Apr-17 | | 15 | AR | Spoke with Tom Brod at Lifespace as follow-up to email on bid procedures. Will discuss with Sloan if still interested in bidding; wants copy of zumBrunnen report. |
| 26-Apr-17 | | 15 | AR | Spoke with Rich Scanlon at Ziegler re: Bid Procedures. Sent Rich Bid procedures @ 4:34pm to share with his Ziegler colleagues. |
| 26-Apr-17 | 1 | | AR | Updated Offering Memorandum |
| 27-Apr-17 | | 60 | AR | Updated Offering Memorandum |
| 27-Apr-17 | | 15 | AR | Spoke with John Franklin @ BB&T re: Bid Procedures. Sent John Bid procedures at 10:19am. |
| 27-Apr-17 | | 5 | AR | Spoke with John Franklin @ BB&T re: Bid Procedures |
| 27-Apr-17 | | 5 | AR | Left message for Joe Mulligan at Cain Bros re: Bid Procedures |
| 27-Apr-17 | | 15 | AR | Left message for Amy Hayman at Piper Jaffray re: Bid Procedures |
| 27-Apr-17 | | 5 | AR | Spoke with Denise deFiebre at Senior Care Development as follow-up to email on bid procedures. Bid in low $40M is stretch for them. Not interested in bidding at higher price. |
| 28-Apr-17 | | 15 | AR | Call with Terri Cunliffe to discuss interest in GreenFields and to review bid timing. Interested; Terri provided name of team members to grant access to data room. Wll have follow-up call to walk through bid procedures with her colleagues. |
| 28-Apr-17 | | 30 | AR | Left message with Stan Waterhouse's assistant to follow-up |
| 1-May-17 | | 15 | AR | Spoke with David Kelly, FA to SQLC, 972-663-3610. On tax-exempt side, SQLC shifting focus to "fortress" markets, specifically Texas and California. Not interested in GreenFields given shift in focus. |

Time Tracking Log
GreenFields of Geneva

| Date | Hours | Minutes | Initials | Description |
|------|-------|---------|----------|-------------|
| 1-May-17 | | 5 | AR | Left message for Chris Green, CFO, Otterbein Homes. Chris had accessed to data room. |
| 1-May-17 | | 5 | AR | Sent bid procedures to Tim Sanders, Senior Investment Officer, Ventas |
| 1-May-17 | | 60 | AR | call prospective buyers |
| 2-May-17 | 2 | 35 | AR | Updated Offering Memorandum |
| 2-May-17 | | 30 | AR | Update call with David Field and Dan Bleck re: marketing progress |
| 3-May-17 | 2 | | AR | Southwest 762 from DCA to MDW Conf. 5Q4TH5 |
| 3-May-17 | 4 | | AR | Prepare for First Day Motions with Bruce Dopke |
| 3-May-17 | 2 | | AR | U.S. Bankruptcy Court - First Day Motions |
| 3-May-17 | 2 | | AR | United 5662 from ORD to DCA Conf. EGNRMM |
| 3-May-17 | | 60 | AR | Updated Offering Memorandum |
| 4-May-17 | | 30 | AR | Spoke with Amy Hayman to discuss GreenFields status. Amy indicated she may have clients who are interested. Sent bid procedures to Amy. |
| 4-May-17 | | 60 | AR | Updated Offering Memorandum |
| 5-May-17 | | 60 | AR | Updated Offering Memorandum w/ McCaine Comments |
| 5-May-17 | | 30 | AR | call w/Denise deFiebre and Brett Mehlman - Senior Care Development |
| 8-May-17 | | 60 | AR | Updated Offering Memorandum |
| 9-May-17 | 1 | 25 | AR | Updated Offering Memorandum |
| 10-May-17 | 1 | 13 | AR | Updated Offering Memorandum |
| 11-May-17 | 2 | | AR | Southwest 762 from DCA to MDW airport Conf. VXSXZ9 |
| 11-May-17 | 2 | | AR | US Bankrupcty Court - Retention Hearing |
| 11-May-17 | 2 | | AR | United 263 from ORD to LGA Conf. PLBV7Z |
| 12-May-17 | | 30 | AR | call w/Jerry Taylor - NHI Reit |
| 15-May-17 | | 30 | AR | call w/David Fields - RBC Capital, Daniel Bleck-Mintz, C.Azano-Mintz, Rob Whitlock-RBC Capital |
| 15-May-17 | | 30 | AR | call w/Terri Cunliffe-Covenant and Matt Caine-Solic Capital |
| 15-May-17 | | 15 | AR | call w/Courtney Nickels - Formation Capital |
| 17-May-17 | | 30 | AR | call w/Nicole Sermier - Orch-Ziff |
| 18-May-17 | | 60 | AR | Updated and Review of Occupancy Data |
| 18-May-17 | | 30 | AR | update call w/Bruce Dopke, Matt Caine and Matt Rubin - Solic Capital |
| 22-May-17 | 2 | | AR | Southwest 762 from DCA to MDW Conf. UAFF4N |
| 22-May-17 | | 60 | AR | transfer from MDW airport to GreenFields site |
| 22-May-17 | 2 | | AR | site visit w/Terri Cunliffe-Covenant Retirement |
| 22-May-17 | | 60 | AR | transfer from GreenFields site to MDW airport |
| 22-May-17 | 2 | | AR | Southwest 6168 from MDW to DCA Conf. UAFF4N |
| 23-May-17 | 1 | | AR | Bondholder's call - status update |
| 25-May-17 | | 30 | AR | update call w/Bruce Dopke, Matt Caine and Matt Rubin - Solic Capital |
| 30-May-17 | | 60 | AR | call w/ Terri Cunliffe - Covenant Retirement and Matt Caine-Solic Capital |
| 31-May-17 | 0 | 15 | PM | Updated and Review of Occupancy Data |
| 1-Jun-17 | | 30 | AR | call w/Tom Brod-LifeSpace Communities and Matt Caine- Solic Capital |

Time Tracking Logs
GreenFields of Geneva

| Date | Hours | Minutes | Initials | Description |
|------|-------|---------|----------|-------------|
| 7-Jun-17 | | 30 | AR | call w/Jody Holt-Covenant Retirement |
| 7-Jun-17 | | 30 | AR | update call w/Bruce Dopke, Matt Caine and Matt Rubin - Solic Capital |
| 7-Jun-17 | | 60 | AR | conference call w/David Fields-RBC Capital Markets, Matt Caine, Solic Capital, Daniel Bleck - Mintz, Clifford Pastel-Dinsmore, Lona Valentine-Dinsmore, Glendon Pratt-Dinsmore and C Martin-Mintz |
| 9-Jun-17 | 4 | 30 | SC | Sent e-mail and call reminders of Bid deadline-7/19/17 to: American Eagle Life Care, BHI Senior Living, Christian Horizons, Concordia Lutheran Ministries, Kisco Senior Living, Life Care Services, Pathway Senior Living, Providence Life Services, Pacific Retirement Services, Senior Living Communities, Senior Star Living, Solera Senior Living, Wesley Willows, RSF Partners, Och-Ziff Real Estate and Ventas. |
| 9-Jun-17 | 0 | 14 | PM | Review of Confidentiality Agreement Signees |
| 12-Jun-17 | | 30 | AR | prepared and sent e-mail reminder of final bid deadline-July 19th |
| 12-Jun-17 | | 30 | SC | Sent e-mail and call reminders of Bid deadline-7/19/17 to: Allegro Living, Royal Senior Care Mgmt., United Church Homes, Garrison Investment Group & Sentio Investments |
| 12-Jun-17 | 0 | 30 | PM | Review of Confidentiality Agreement Signees |
| 19-Jun-17 | 1 | | AR | call w/Covenant Retirement - discuss financing structure |
| 19-Jun-17 | | 30 | AR | call w/LifeSpace - discuss financing structure |
| 19-Jun-17 | 0 | 60 | PM | Review and Upload of Alta Survey |
| 21-Jun-17 | | 30 | AR | update call w/Bruce Dopke, Matt Caine and Matt Rubin - Solic Capital |
| 22-Jun-17 | 1 | | AR | call w/Daniel Bleck-Mintz, MaryJane Menier - Invesco, Dean Lewallen-AB Global, Jonathan Chirunga-Pioneer Investment, Joseph Guilli-Greensquare, Virginia Housum-UMB, David Fields-RBC Capital, and Charles Azano-Mintz |
| 23-Jun-17 | 1 | | AR | call w/Jody Holt-Covenant Retirement |
| 26-Jun-17 | | 30 | AR | call w/Doug Wolfe |
| 29-Jun-17 | 2 | | AR | transfer from home to airport |
| 29-Jun-17 | 2 | | AR | Southwest 2345 from DCA to MDW airport Conf. L93MNP |
| 29-Jun-17 | 1 | | AR | transfer from MDW to GreenFields site |
| 29-Jun-17 | 1 | 30 | AR | site visit w/Covenant Retirement |
| 29-Jun-17 | 2 | | AR | site visit w/Senior Care Development |
| 29-Jun-17 | 1 | | AR | transfer from GreenFields to MDW airport |
| 29-Jun-17 | 2 | | AR | Southwest 1528 from MDW to DCA airport Conf. L93MNP |
| 29-Jun-17 | 1 | | AR | transfer from airport to home |

Time Tracking Logs
GreenFields of Geneva

| Date | Hours | Minutes | Initials | Description |
|------|-------|---------|----------|-------------|
| 7-Jul-17 | 2 | | SC | Sent follow up e-mail/call to: Sentio Investments, RSF Partners, Wesley Willows, Senior Star Living, Pathway Senior Living, Kisco Senior Living, Christian Horizons, BHI Senior Living, American Eagle and Allegro Senior Living, |
| 7-Jul-17 | | 30 | AR | update call w/Bruce Dopke, Matt Caine and Matt Rubin - Solic Capital |
| 7-Jul-17 | | 30 | AR | call w/Senior Care Development |
| 19-Jul-17 | 1 | | AR | Review procedures related to BID DEADLINE |
| 21-Jul-17 | | 30 | AR | update call w/Bruce Dopke, Matt Caine and Matt Rubin - Solic Capital |
| 25-Jul-17 | 1 | 30 | AR | draft GreenFields summary of Overbid Marketing |
| 1-Aug-17 | | 30 | AR | update call w/Bruce Dopke, Matt Caine and Matt Rubin - Solic Capital |
| 9-Aug-17 | 0 | 60 | PM | Updated and Review of Occupancy Data |
| 17-Aug-17 | | 30 | AR | update call w/Bruce Dopke, Matt Caine and Matt Rubin - Solic Capital |
| 25-Oct-17 | 1 | | AR | review Affidavit with Bruce Dopke |
| 26-Oct-17 | 2 | | AR | transfer from home to airport |
| 26-Oct-17 | 2 | | AR | Southwest 740 from DCA to MDW airport Conf. WKLNLJ |
| 26-Oct-17 | | 30 | AR | meet Bruce Dopke for hearing preparation |
| 26-Oct-17 | 1 | | AR | US Bankrupcty Court - Hearing |
| 26-Oct-17 | 1 | 30 | AR | Southwest 547 from MDW to DCA airport Conf. WKLNLJ |
| 26-Oct-17 | 1 | | AR | transfer from airport to home |
| 7-Nov-17 | | 30 | AR | call w/Matt Caine-Solic Cap and Matthew Rubin |
| 20-Dec-17 | 2 | | AR | transfer from office to airport |
| 20-Dec-17 | 2 | | AR | Southwest 6547 from DCA to MDW airport Conf. Q3DMNV |
| 21-Dec-17 | 1 | 30 | AR | U.S. Bankruptcy Court - Fee Application Hearing |
| 21-Dec-17 | 1 | | AR | transfer from airport to home |
| 21-Dec-17 | 2 | | AR | Southwest 57 from MDW to DCA airport Conf. Q3DMNV |
| Aug-2016 through Oct-2017 | 50 | | PM; MW | Time allocated for drafting, review and updating confidential information memorandum and organizing and populating data room by Patrick Mallen and Mack Welch (HJ Sims bankers) |
| Total | 199 | 3144 | | |

Calculation of total hours:

| | |
|---|---|
| Whole Hours | **199** |
| Partial Hours (Minutes) of 3,144 /60 | 52 |
| **Total Hours:** | **251** |